**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**



| | | |
|---|---|---|
| ROBERT TOBEY, individually and on behalf of all others similarly situated, | § § § | |
| *Plaintiff,* | § | |
| vs. | § | Civil Action No. 3:24-cv-2932 |
| | § | |
| ACE PARKING MANAGEMENT, INC. AND PARKING REVENUE RECOVERY SERVICES, INC., | § § § § | |
| *Defendants.* | § | **JURY TRIAL DEMANDED** |

---

## PLAINTIFF'S CLASS ACTION COMPLAINT

---

### I. SUMMARY OF ACTION

1.     Robert Tobey, individually and on behalf of the Class of all other persons similarly situated, files this Class Action Complaint against ACE Parking Management, Inc. ("ACE") and Parking Revenue Recovery Services, Inc. ("PRRS"), and alleges as follows:

### II. INTRODUCTION

2.     ACE is a national parking and transportation management leader in the parking industry. Its website and press releases speak to a technology-driven approach to provide seamless parking solutions and maximize revenue for facility owners. In actuality, ACE created and utilizes payment and enforcement systems that are intentionally designed to confuse and deceive consumers into paying unauthorized fines and fees.

3.     ACE's half-billion-dollar a year business model entails duping consumers into wrongfully paying illegal "notice fees" allegedly incurred while parking at private properties owned or managed by ACE.

4.      ACE touts itself as an "innovator" whose "technology has been built over the years to embrace the disruptor economies that impact our business."[1] ACE's website claims that "ACE's proprietary operational systems allow [ACE] to provide the latest technology, customized to fit your unique operational needs, while maximizing your bottom-line profits."[2] In reality, ACE's "profit maximizing" business model is to dupe consumers into paying illegal parking notice fees allegedly incurred while parking at private properties owned or managed by ACE.

5.      On information and belief, ACE owns or partners with entities and persons that own, manage, or otherwise control parking facilities throughout the United States. According to its website, ACE manages 750,000 parking stalls, enabling it to service over 500,000 customers a day.[3]

6.      ACE uses monitoring technology like license plate readers ("LPR") to identify and track vehicles entering and leaving facilities it owns or manages so it can identify customers who purportedly fail to pay the required parking charge or who, like Plaintiff, purportedly overstay their allotted time.

7.      PRRS is "a leading provider of fully integrated parking compliance, customer service/dispute processing, and access monitoring services."[4] PRRS is "one of the first companies to automate parking monitoring and compliance programs using a software-based solutions called ARC [Automated Recognition and Compliance System]," which "enables 24-hour real time monitoring of facilities using free flow traffic methods."[5] PRRS does so pursuant to "the 5 foundations of our compliance program," which include (1) parking lot monitoring (manual and

---

1 [Technology & Innovation (aceparking.com)](aceparking.com).
2 [Technology & Innovation (aceparking.com)](aceparking.com).
3 [Company Facts and History (aceparking.com)](aceparking.com).
4 [Parking Revenue Recovery Services | Company (prrsparking.com)](prrsparking.com).
5 [Parking Revenue Recovery Services | Compliance Programs (prrsparking.com)](prrsparking.com).

fixed LPR) and enforcement; (2) citation and data management; (3) notice dispute processing; (4) payment processing; and (5) real time analytics and reporting.[6] PRRS provides these services to over 800 parking locations across North America, issuing **over 100,000 parking citations every month**.[7]

8.      On information and belief, ACE contracts with PRRS to provide such monitoring technology and enforcement services to its parking facilities like the one used by Plaintiff.

9.      PRRS, pursuant to its relationship with ACE, uses LPR technology to determine when a vehicle exits the parking facility and confirms whether adequate payment has been made. If someone fails to pay the parking charge or overstays their allotted time, PRRS mails a form notice of parking violation ("Notice") to the vehicle owner, demanding payment of a "Notice Fee" (the "Notice Fee" or "Notice Fee Scheme"). The "Notice Fee" is multiple times the parking charge, is undisclosed prior to being levied, is arbitrary and outrageous in amount, and is illegal. In Plaintiff Tobey's case, the parking fare is stated to be $15, and the Notice Fee is $90.[8] ACE and/or PRRS's Notice Fee is **600% the alleged parking fee**.

10.     As part of PRRS's five-part foundational program: "To ensure the highest recovery rate, … unresolved notices (violations not paid, settled or dismissed) are transferred to our Attorney Collection Program to encourage payment. We obtain the violators' names and addresses and send collection letters to the violators, in escalating severity, to obtain payment from the violators. With the operator client's consent, additional collection actions may be employed (e.g., legal action and booting or towing the violator's vehicle)."[9] In Plaintiff Tobey's case, PRRS

---

[6] Parking Revenue Recovery Services | Services (prrsparking.com).
[7] Parking Revenue Recovery Services | A New Standard in Compliance (prrsparking.com).
8 Ex. A, Initial Notice of Parking Violation dated June 16, 2024.
[9] Parking Revenue Recovery Services | Services (prrsparking.com).

employed "Daniel B. Kelley Attorney at Law" to send numerous escalating violation notices demanding payment of the Notice Fee, without addressing Plaintiff Tobey's repeated dispute of the charges.[10]

11.     In the various form Notices, ACE and/or PRRS threaten to tow and/or boot a consumer's vehicle or subject the consumer to further potential legal actions if the Notice Fee is not paid. By the time consumers receive a Notice, their vehicle has already left the ACE facility, and PRRS's threats of "booting and/or towing" are plainly false, misleading and illegal. The Notice also threatens consumers with "report[ing] this debt to one or more of the credit bureaus after the expiration of thirty-day dispute period," which "may have a negative effect on you, including but not limited to your credit rating and credit score."[11]

12.     No authority permits ACE or PRRS to tow and/or boot a consumer's vehicle outside of ACE's facilities, nor to levy and collect exorbitant Notice Fees on behalf of a private party; ACE's and PRRS's Notice Fee Scheme is unlawful, and violates the Federal Fair Debt Collection Practices Act ("FDCPA"); the Texas Fair Debt Collection Practices Act ("TFDCPA"), Texas Finance Code § 392; and the Texas Deceptive Trade Practices Act ("DTPA"), Texas Business and Commerce Code §§ 17.41–17.63.

13.     As a result of the Notice Fee Scheme, a significant number of ACE's customers who have parked at an ACE-managed facility that contracts with PRRS have received Notices allegedly imposing Notice Fees and falsely threatening other actions that ACE/PRRS cannot lawfully perform. ACE's and PRRS's intentional scheme coerces consumers into paying these illegal Notice Fees.

---

[10] On information and belief, David B. Kelley is not licensed to practice law outside the State of Colorado.
[11] Ex. C, Third Notice of Parking Violation dated September 5, 2024.

## III. PARTIES

14.    Plaintiff Robert Tobey is, and at all relevant times has been, a resident and citizen of Dallas, Texas. Plaintiff received a Notice from PRRS seeking a Notice Fee and paid the Notice Fee.

15.    Defendant ACE Parking Management, Inc. is a California corporation. Its principal place of business is 645 Ash Street, San Diego, California 92101. ACE may be served with process in Texas through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. ACE includes any presently unknown predecessors, successors, subsidiaries, affiliates, and all those benefiting from the Notice Fee Scheme, which may be legally liable whether by merger, assignment, or otherwise.

16.    Defendant Parking Revenue Recovery Services, Inc. is a Colorado corporation. Its principal place of business is 12381 E. Cornell Avenue, Aurora, Colorado 80014-3323. PRRS may be served with process in Texas through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. PRRS includes any presently unknown predecessors, successors, subsidiaries, affiliates, and all those benefiting from the Notice Fee Scheme, which may be legally liable whether by merger, assignment, or otherwise.

## IV. JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class of plaintiffs and one defendant are citizens of different States. This Court has subject matter jurisdiction over Plaintiffs' FDCPA claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). This Court may

exercise supplemental jurisdiction over Plaintiff's state-law claims under the TFDCPA and DTPA pursuant to 28 U.S.C. § 1367(a).

18.    This Court has specific personal jurisdiction over ACE because it conducts business in Texas, has purposefully availed itself of the benefits and protections of Texas by continuously and systematically conducting substantial business in this judicial district, directing advertising and marketing materials to districts within Texas, and intentionally and purposefully seeking to collect Notice Fees within the districts of Texas and throughout the United States with the expectation and intent that consumers would pay them, and it has illegally collected and profited from these Notice Fees.

19.    This Court has specific personal jurisdiction over PRRS because it conducts business in Texas, has purposefully availed itself of the benefits and protections of Texas by continuously and systematically conducting substantial business in this judicial district, directing advertising and marketing materials to districts within Texas, and intentionally and purposefully seeking to collect Notice Fees within the districts of Texas and throughout the United States with the expectation and intent that consumers would pay them, and it has illegally collected and profited from these Notice Fees.

20.    Venue is proper in this Court, as it is the district where a substantial part of the events giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2). Plaintiff parked in an ACE facility in the Northern District of Texas, and PRRS mailed its violation Notice (with the intent to collect the Notice Fee) to Plaintiff, who lives in the Northern District of Texas.

## V. CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this action as a class action and as the representatives of the Class and Subclasses defined below. This action is brought and may be maintained under Federal Rule of Civil Procedure 23.

22.    Plaintiff brings this action on behalf of himself and all other individuals who meet the following Class and Subclass definitions:

a.    **Federal Claims Class ("Federal Class")**:

i.    All non-excluded persons or entities, being citizens of the United States who have received a Notice from ACE and/or PRRS regarding an ACE-managed parking facility and paid any Notice Fee to ACE and/or PRRS.

ii.    Excluded from the Federal Class are: (1) agencies, departments, or instrumentalities of the United States of America, (2) the State of Texas, (3) ACE, its affiliates, predecessors, and employees, officers, and directors, (4) PRRS, its affiliates, predecessors, and employees, officers, and directors, and (5) all persons who properly execute and file a timely request for exclusion from the Federal Class.

b.    **Texas Claims Subclass ("Texas Subclass"):**

i.    All non-excluded persons or entities, being citizens of Texas who have received a Notice from ACE and/or PRRS and paid any Notice Fee to ACE and/or PRRS.

ii.    Excluded from the Texas Subclass are: (1) persons who are not citizens of Texas, (2) agencies, departments, or instrumentalities of the United States of America, (3) the State of Texas, (4) ACE, its affiliates, predecessors, and employees, officers, and directors, (5) PRRS, its affiliates, predecessors, and employees, officers, and directors, and (6) all persons who properly execute and file a timely request for exclusion from the Texas Subclass.

23.    Plaintiff is a member of both the Federal Class and the Texas Subclass. Putative class members may fall into either class, or both.

24.    The number of members in each class for whose benefit this action is brought is so numerous that joinder of all class members is impracticable.

25.    Members of the Federal Class and Texas Subclass are so numerous and spread out across the United States and Texas that joinder of all is impractical.

26.    ACE operates hundreds of parking facilities across the United States, where it partners with PRRS to seek Notice Fees from patrons of these facilities.

27.     Millions of consumers use these facilities, and it is reasonable to assume that a significant number of ACE's customers have been sent Notices, issued Notice Fees, and paid Notice Fees to ACE and/or PRRS.

28.     ACE and PRRS have within their possession or control records that identify all persons to whom they sent Notices and collected Notice Fees. The actual number in each class can be established through discovery of ACE's and PRRS's books and records.

29.     Among the questions of law and fact that are common to the Federal Class members are:

    a.  whether ACE and/or PRRS are "debt collectors" under the FDCPA;[12]

    b.  whether ACE and/or PRRS may lawfully assess and collect or attempt to collect the Notice Fee on ACE's behalf; and

    c.  whether the Notice Fee Scheme violates the FDCPA.

30.     The questions of law and fact that are common to the Texas Subclass are:

    a.  whether ACE and/or PRRS on ACE's behalf may lawfully assess and collect or attempt to collect the Notice Fee;

    b.  whether the Notice Fee Scheme is a "debt collection" and ACE and/or PRRS are "debt collectors" under the TFDCPA;

    c.  whether the Notice Fee Scheme violates the TFDCPA;

    d.  whether ACE and/or PRRS's claim to, and collection of, a Notice Fee, was and continues to be done without a surety bond on file with the Texas secretary of state as required under the TFDCPA;

---

[12] PRRS expressly admits that it is a debt collector. *See* Ex. C, Third Parking Violation Notice dated September 5, 2024.

e.  whether ACE and/or PRRS's claim to, and collection of, a Notice Fee, including the statements in the form Notice, constitutes an impermissible threat or coercion under the TFDCPA;

f.  whether ACE and/or PRRS's claim to, and collection of, a Notice Fee is an "unconscionable action" under the TFDCPA;

g.  whether ACE and/or PRRS's claim to, and collection of, a Notice Fee, including the statements in the form Notice, is a false, misleading, or a deceptive act or practice under the TFDCPA; and

h.  whether the collection, and attempted collection, of the Notice Fee by ACE and/or PRRS was committed intentionally.

31.    Plaintiff's claims are typical of the members of the Federal Class and Texas Subclass because he has received Notice from PRRS, pursuant to its relationship with ACE, attempting to collect the Notice Fee, and he has paid the Notice Fee. Plaintiff seeks no relief that is antagonistic or adverse to other members of the two classes.

32.    Plaintiff is committed to the vigorous prosecution of this action and has retained counsel who are competent in the prosecutions of class actions, FDCPA claims and complex litigation. Accordingly, Plaintiff will fairly and adequately protect and represent the interests of each class member.

33.    Questions of law or fact that are common to the members of the classes are substantially similar and predominate over any questions affecting only individual class members, and a class action is the only appropriate method for the fair and efficient adjudication of this controversy for these reasons:

a. The individual Notice Fees and any ancillary amounts of damages involved are too small to justify individual actions,

b. The costs of individual actions would unreasonably consume the amounts that would be recovered,

c. Individual actions would unduly burden the judicial system, and

d. Individual actions brought by class members would create a risk of inconsistent results and unnecessarily duplicate this litigation.

34.     This district represents the most desirable forum for the litigation of the claims of the class as a substantial portion of the acts giving rise to the claims of the classes occurred in this district.

35.     Plaintiff does not anticipate any difficulty in managing this action because the evidence proving ACE and PRRS's scheme is easily ascertainable through discovery. The identities of the class members are known by ACE and PRRS, damages can easily be calculated from ACE's and PRRS's records, and any statutory or punitive damages will be decided by this Court and a jury.

## VI. STATEMENT OF FACTS

### A. ACE's system is designed to generate Notice Fees.

36.     At parking lots owned or operated by ACE, individuals may park their cars in a particular spot, for a particular amount of time, in exchange for a pre-set fee. In Plaintiff Tobey's case, the parking rate at the ACE parking lot located at 900 Main Street, Dallas, Texas (the "Main Street Lot"), was $15 for his stay lasting 2 hours on June 11, 2024.[13]

---

[13] The Main Street Lot is located across the street from the federal courthouse. Plaintiff Tobey, an attorney and former president of the Dallas Bar Association, was at the George Allen courthouse attending a hearing when he was ticketed.

37.     On information and belief, many ACE parking facilities, like the Main Street Lot, are unattended for long periods of time (if attended at all). There are also no entry or exit gates at the Main Street Lot, and any individuals wanting to park at the Main Street Lot must pay for parking by visiting a payment kiosk on the lot or by scanning a QR code.[14] Customers enter their license plate number and select the amount of time they intend to stay, and provide their credit card information to pay the fare for the corresponding time. In Plaintiff Tobey's case, he used the payment kiosk to pay the posted $15 fare for his two-hour stay. The posted rate for stays lasting between 2-3 hours was $18, and the highest posted rate for stays lasting between 10-24 hours was $24.[15]

38.     On information and belief, there are only hourly parking rates posted at the ACE parking facilities. While Plaintiff Tobey's parking facility included PRRS signage stating that "[v]ehicles failing to comply with the Facility's use rules will be assessed additional fees up to $250.00 per violation…,"[16] there is nothing defining what the facility's "use rules" are (much less with respect to an overstayed parking charge in particular), whether an overstayed parking charge is a violation of such "use rules" or subject to "additional fees," nor anything indicating how such "additional fees" would be calculated or assessed. The Notice Fee is also not disclosed through the kiosk purchase, or identified anywhere on the printed ticket receipt customers are told to display on their cars' dash.[17] On information and belief, the nondisclosure of the Notice Fees for unpaid

---

[14] A QR code (Quick Response) is a type of bar code consisting of black squares arranged on a background in a square grid, which can be scanned by a smartphone to access a specific webpage or digital payment application.

[15] *See* Ex. D, Posted Rates.

[16] Contradictorily, another PRRS sign at the Main Street Lot claims that parking fees "up to $150.00" may be imposed for failure to comply with the unidentified "Lot rules."

[17] *See* Ex. E, Parking Ticket.

parking fares is an intentional business strategy used by ACE and PRRS to later coerce the Notice Fee from an individual and generate higher returns for themselves.

39.    Upon information and belief, PRRS, as per its relationship with ACE, installs a video monitoring system which tracks and documents a vehicle's license plate. As shown in the attached Notice, PRRS's system takes a picture of an individual's vehicle, with a time stamp for entry and exit in calculating the unpaid fare and Notice Fee.[18] In Plaintiff Tobey's case, rather than charge Plaintiff the posted fare corresponding with the actual length of his stay (here, an additional $3), **Plaintiff was fined $90 for overstaying his time by just 11 minutes.**

40.    ACE's system is designed to extract higher payments from customers, resulting in higher returns for ACE and parking lot facility owners. A simple hypothetical example is shown in the following table. The table calculates the estimated revenue for a garage that has 3,000 daily visitors under two scenarios: a scenario with a normal entry gate system that requires 100% compliance, and the second scenario using ACE's video monitoring system, assuming a 20% nonpayment rate and a 90% Notice Fee collection rate. Under this basic example, **ACE's system generates 188% of the revenue from a traditional gate system, driven by Notice Fees**.

|  | Traditional Entry Gate System | ACE Automated System |
|---|---|---|
| Cars Per Day | 3,000 | 3,000 |
| Paying Customers | 3,000 | 2,400 |
| Non-Paying Customers (20%) | 0 | 600 |
| Revenue for $15 Parking Charge | $45,000 | $36,000 |
| Number of Customers Subject to Notice Fee of $90 | 0 | 600 |

---

[18] *See* Ex. A, Initial Notice of Parking Violation dated June 16, 2024.

| | | |
|---|---|---|
| Number of Customers who Pay Notice Fee (90%) | 0 | 540 |
| Notice Fee Revenue | 0 | $48,600 |
| **Total Revenue** | **$45,000** | **$84,600** |

41.     On information and belief, the Notice Fee system, including the failure to post the amount and/or assessment of a "notice fee" in ACE-managed parking facilities, is a design that ACE and PRRS know induces individuals to park their vehicles in the parking facility. The design of this system, including the act of sending threatening parking violation notices to consumers afterward, including ones authored by attorneys (albeit unlicensed to even practice law in the State of Texas), is intentional and was created for a specific goal: intimidating customers to extract unlawful Notice Fees.

42.     ACE's system intentionally encourages minor technical nonpayment or underpayments of parking fees such that a large, arbitrary and unauthorized Notice Fee can be threatened and collected from a significant portion of its customers. However, even in the instance where a customer intentionally does not pay a posted parking rate, that customer is still not liable to ACE for any arbitrary "Notice Fee" it chooses to levy in addition to a legitimate posted parking fee.

### B. ACE's and PRRS's collection of the Notice Fee intimidates consumers into paying inflated amounts.

43.     Without any lawful authority, ACE and/or PRRS sends individuals who fail to pay for parking a form "Notice of Non-Compliance" through the U.S. mail.[19] The clear goal of the Notice is to inflate any amounts owed and intimidate consumers into paying these inflated amounts.

---

[19] Ex. A, Initial Notice of Parking Violation dated June 16, 2024.

44.    In the attached example, the Notice claims that Plaintiff Tobey committed a "violation" by exceeding the allotted time for his parking fare of $15 (which he already paid), and includes a Notice Fee of $90—**fining Plaintiff Tobey over 600% of the parking fare he already paid for having exited the lot only 11 minutes after expiration of his allotted parking time**. ACE and/or PRRS cannot lawfully assess a Notice Fee on behalf of a private party, and each of the Notices sent to individuals constitutes an unlawful and unconscionable act.

45.    The form Notice intimidates individuals into paying the Notice Fee by informing them that failure to pay within 30 days will result in their account being assigned to a debt collector, and including threating language such as, "[t]he above vehicle may be subject to towing or booting, and the owner may be liable for additional costs and fees, to the extent permitted by law."[20] Outrageously, the form Notice further purports to inform customers that "[w]hen you entered the facility, you agreed the sole remedy for all unresolved disputes is binding arbitration and specifically waived the rights to a jury trial, class action and/or class arbitration."[21] Of course, customers did no such thing by simply parking their car in a lot. These threats imply authority that ACE and PRRS simply do not have. ACE and PRRS cannot boot a consumer's vehicle nor tow a consumer's vehicle for failing to pay the inflated and illegal Notice Fee. Nor can they unilaterally waive a consumer's right to a jury trial, class action and/or class arbitration.

46.    The form Notices further improperly intimidate individuals into paying the Notice Fee by falsely implying that a licensed attorney will enforce the violation against the consumer. After receiving the initial notice, Plaintiff received several form notice letters on letterhead from

---

[20] Ex. A, Initial Notice of Parking Violation dated June 16, 2024.

[21] Ex. A, Initial Notice of Parking Violation dated June 16, 2024. PRRS-posted signage in the Main Street Lot similarly purports to inform customers that the mere act of parking in the lot constitutes a contractual agreement to waive their right to a jury trial, class action and/or class arbitration. But such a "waiver" is unenforceable as a matter of law.

14

"Daniel B. Kelly Attorney at Law, LLC."[22] Upon information and belief, Daniel B. Kelley is not licensed to practice law outside the state of Colorado.

47.     In addition, the form Notice falsely represents PRRS's role in collecting the Notice Fee. The initial Notice identifies PPRS as the "Issuer/Creditor" of the Notice Fee, and states that the account "will be considered in default and assigned to a debt collector" within 30 days, while **failing to disclose that PRRS is that debt collector**. Indeed, it is not until the **third** form Notice to consumers that PRRS expressly discloses that "this is a communication from a debt collector. This is an attempt to collect a debt."[23] PRRS's failure to disclose itself as a debt collector, and its attempt to collect a debt via its illegal Notices, is a flagrant violation of the FDCPA and TFDCPA.

48.     What is more, all of the conduct by ACE and/or PRRS, as described above, was done without a surety bond on file with the Texas Secretary of State, as required by Texas Finance Code §392.101.

49.     This is not the first time PRRS and Daniel B. Kelley have come under scrutiny for PRRS's deceptive and unfair practices. Just last year, the Colorado Attorney General's office sanctioned PRRS "after an investigation found the Aurora-based company illegally collected or attempted to collect on fines for parking that was already paid for or were incurred by another vehicle owner."[24] According to the Colorado Attorney General, "Under the terms of the agreement [PRRS] need[s] to change their practices. They are on notice that if they don't change their practices, we are watching."[25] Notwithstanding this warning, PRRS continues to engage in illegal behavior.

---

[22] Exs. B and C, Second Notice of Parking Violation dated July 28, 2024, and Third Notice of Parking Violation dated September 5, 2024.
[23] Ex. C, Third Notice of Parking Violation dated September 5, 2024.
[24] Attorney General Phil Weiser announces settlement after parking company illegally charged, collected fines from hundreds of consumers - Colorado Attorney General | Colorado Attorney General (coag.gov).
[25] *Id.*

50.     The Notice Fee Scheme is unlawful because it allows ACE and PRRS to inflate any potential debt (unpaid parking) by orders of magnitude without any authority to do so, and tricks and intimidates individuals into paying the inflated Notice Fee by threatening towing and booting, further fines, or legal action, which ACE and PRRS have no authority to undertake.

## VII. CAUSES OF ACTION

### A. Count One: Violation of the FDCPA

51.     Plaintiffs incorporate the above allegations.

52.     This claim is asserted against ACE and PRRS.

53.     ACE is a "debt collector" under the FDCPA, 15 U.S.C. § 1692a(6) because ACE, through PRRS, mails Notices through the U.S. mail, and thereby "uses mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

54.     PRRS admits that it is a debt collector under the FDCPA.[26] PRRS is in fact a "debt collector" under the FDCPA, 15 U.S.C. § 1692a(6), because PRRS mails Notices through the U.S. mail, and thereby "uses mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

55.     ACE and PRRS have violated provisions of the FDCPA which prohibit:

a.  The "false representation of ... the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). The Notice Fee falsely represents that (1) ACE and/or PRRS is legally authorized to impose a fine, and (2) implies that the inflated Notice Fee is something that must be paid.

b.  The "representation or implication that nonpayment of any debt will result in . . . the seizure . . . of any property . . ." *Id.* § 1692e(4). In violation of this provision, ACE and/or PRRS's form Notice falsely states that an individual's

---

[26] Ex. C, Third Notice of Parking Violation dated September 5, 2024.

car may be booted or towed for failure to pay the fine, when ACE and/or PRRS has no authority to do so.

c.    The "threat to take any action that cannot legally be taken or that is not intended to be taken." *Id.* § 1692e(5). The form Notice claims that failure to pay the fine may result in dedicated collection or referral to an attorney. ACE and/or PRRS cannot legally assess a fine, thus any threat regarding nonpayment violates this provision.

d.    The use of "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10). The fact the Notice claims a parking "violation" is deceptive because a private party cannot assess a violation. The Notice Fee falsely implies that ACE and/or PRRS is acting under police powers of the state.

e.    The use of "unfair or unconscionable means to collect or attempt to collect any debt," including the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1). The Notice Fee (that is contained in each of the form Notices sent by ACE and/or PRRS) is a "fee" under this provision, and thus ACE and/or PRRS has systematically and repeatedly breached this provision and illegally collected such monies.

f.    Threats "to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement." *Id.* § 1692f(6). The Notices include the threat that the "vehicle may be subject to towing or booting," and similar threats, which ACE and/or PRRS had no right to do, or, on information and belief, an intention to do.

56.    ACE's and PRRS's actions were intentional and did not result from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error.

57.    ACE's and PRRS's actions have proximately caused direct injury to Plaintiff and to the numerous Federal Class, consisting of the Notice Fee and any ancillary non-disclosed fees or costs. Plaintiff and the Federal Class are also entitled to statutory damages under the FDCPA.

**B. Count Two: Violation of TFDCPA**

58.    Plaintiffs incorporate the above allegations.

59.     This claim is asserted against ACE and PRRS.

60.     Each Plaintiff is a "consumer" with a "consumer debt" under the TFDCPA because the parking cost and associated Notice Fee is "an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." Tex. Fin. Code §§ 392.001(1)–(2).

61.     ACE is a "debt collector" involved in "debt collection" under the TFDCPA, because ACE's Notices constitute "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* §§ 392.001(5)–(6).

62.     PRRS is a "debt collector" involved in "debt collection" under the TFDCPA, because PRRS's Notices constitute "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* §§ 392.001(5)–(6).

63.     ACE and PRRS have violated provisions of the TFDCPA that prohibit:

    a.  engaging in debt collection without obtaining a surety bond from a surety companied authorized to do business in Texas and filing a copy of that bond with the secretary of state. *Id.* § 392.101. ACE and PRRS violate this provision by trying to collect debts without having obtained or filed the surety bond, as required by the statute, at any point relevant to this complaint and up to its filing.

    b.  threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings; or threatening to take an action prohibited by law. *Id.* §§ 392.301(7)–(8). ACE and PRRS violate these provisions by illegally threatening that a consumer's vehicle will be towed or booted, or the consumer may incur additional fees, future ticketing, referred to a dedicated collection agency, or incur other legal action. ACE and PRRS, as private companies, have no authority to find and tow or boot a consumer's vehicle, nor refer the Notice Fee to a collection agency. Thus, Plaintiff's Notice, and each of the Notices sent to the Texas Subclass, each represent a violation of the Texas Finance Code.

    c.  The use of "unfair or unconscionable means" to collect or attempt to "collect interest or a charge, fee, or expense incidental to the obligation" that is not expressly authorized by the agreement creating the obligation

or legally chargeable to the consumer." *Id.* § 392.303(a)(2). The Notice Fee (that is allegedly imposed in each of the Notices sent by ACE and/or PRRS) is a "fee" under this provision, and thus ACE and/or PRRS has systematically and repeatedly breached this provision and illegally collected such monies.

    d.   Misrepresenting the character, extent, or amount of a consumer debt. *Id.* § 392.304(a)(8). Notice allegedly imposing a Notice Fee falsely represents that (1) ACE and/or PRRS is legally authorized to impose a fine, and (2) implies that the inflated Notice Fee is something that must be paid.

64.     ACE and PRRS's actions were not the result of a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error.

65.     ACE and PRRS's actions have proximately caused direct injury to Plaintiffs and to the Texas Subclass, consisting of the Notice Fee and any undisclosed ancillary fees or costs. Plaintiffs and the Texas Subclass are also entitled to statutory damages.

## C. Count Three: Violation of DTPA

66.     Plaintiffs incorporate the above allegations.

67.     This claim is asserted against ACE and PRRS.

68.     In Texas, the DTPA allows Plaintiffs to bring an action against any person who uses or employs false, misleading, or deceptive acts or practices. Tex. Bus. & Com. Code § 17.50(a)(1); *Miller v. Keyser*, 90 S.W.3d 712, 715 (Tex. 2002). ACE and PRRS are considered a "person" under the DTPA. *Id.* § 17.45(3).

69.     Plaintiff and members of the Texas Subclass are considered "consumers" under the DTPA because they are individuals who sought or acquired goods or services by purchase or lease. Tex. Bus. & Com. Code § 17.45(4).

70.     ACE's and PRRS's Notice and Notice Fee Scheme, whereby they threaten fines, booting, and/or towing, further legal action, or reporting a debt to one or more credit bureaus is an

intentional practice that is designed to take advantage of consumers' lack of knowledge to a grossly unfair degree.

71.    ACE's and PRRS's Notice Fee Scheme constitutes an "unconscionable action" under the DTPA. Each mailed Notice is a separate act, and thus, ACE and PRRS have violated the DTPA numerous times. *Id.* §§ 17.45(5) and 17.50(a)(3). In addition, ACE's and PRRS's actions of actually charging and collecting the Notice Fees and any non-posted ancillary fees are additional DTPA violations.

72.    ACE's and PRRS's violations of the TFDCPA, set forth above, also constitute violations of the DTPA. Texas Finance Code 392.404.

73.     Further, ACE and PRRS have violated the DTPA through the following false, misleading, and deceptive acts:

a.    causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services. Tex. Bus. & Com. Code § 17.46(2). The fact the Notice claims a parking "violation" is confusing because a private party cannot assess a violation. The Notice, allegedly imposing a Notice Fee, falsely implies that ACE and PRRS are acting under or has sponsorship of police powers of the state.

b.    representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law. *Id.* § 17.46(b)(12). With its form Notice, ACE and PRRS have represented to Plaintiff and the Texas Subclass that failing to pay for parking grants ACE and/or PRRS the right to levy the Notice Fee, grants ACE and/or PRRS the right to seize a consumer's vehicle through booting or towing, and allows legal action to collect the Notice Fee.

74.    Defendants have caused and proximately caused direct injury to Plaintiff and the Texas Subclass, who have paid the Notice Fee or any non-posted ancillary fees or costs.

75.    Because ACE and PRRS intentionally perpetrated the Notice Fee Scheme, Plaintiff and the Texas Subclass are entitled to recover treble damages. *Id.* § 17.50(b)(1).

### D. Count Four: Injunctive Relief

76.    Plaintiffs incorporate the above allegations.

77.    This claim is asserted against ACE and PRRS.

78.    Plaintiff moves for injunctive relief to prevent ACE and PRRS from perpetrating the Notice Fee Scheme. Plaintiff requests a declaration and permanent injunction from the Court requiring ACE and PRRS to eliminate the Notice Fee Scheme altogether.

79.    ACE's and PRRS's actions of mailing, attempting to collect, and collecting Notice Fees apply generally to the Texas Subclass, such that injunctive relief is appropriate. ACE's and PRRS's Notice Fee Scheme is an intentional business practice that applies to the Texas Subclass. Specific to the Texas Subclass, the DTPA expressly authorizes injunctive relief. *See* Tex. Bus. & Comm. Code § 17.50(b)(2).  In addition, the TFDCPA also specifically authorizes injunctive relief. Texas Finance Code at 392.403(a)(1).

80.    Plaintiff has suffered an irreparable injury, including lost time and mental anguish from ACE's and PRRS's illegal threats and simple monetary damages are inadequate to compensate for this injury.

81.    Balancing the hardships between Plaintiff on the one hand, and ACE and PRRS on the other, a remedy in equity is warranted to prevent ACE and PRRS from continuing to illegally extract Notice Fees from its consumers. The public interest would not be disserved by a permanent injunction, because without this equitable relief, ACE and PRRS would be free to continue extracting illegal Notice Fees after this lawsuit

82.    Thus, Plaintiff requests a declaration from this Court and permanent injunctive relief to end ACE's and PRRS's illegal scheme. Specifically, Plaintiff requests the following:

   a.    Prohibit ACE and/or PRRS from attempting to collect any "fines" without it having a surety bond on file with the Texas Secretary of State;

b.  Require ACE and/or PRRS to clearly post parking rates at all facilities for all times of the day;

c.  Prevent ACE and/or PRRS from attempting to charge, or from collecting "fees" or other monies which exceed the posted parking rate; and

d.  Prevent ACE and/or PRRS from threatening to tow vehicles, boot vehicles, refer consumers to collection agencies, levy additional fines or charges, or take any other actions in violation of the TFDCPA.

## VIII. DEMAND FOR JURY TRIAL

83.  Plaintiff hereby requests a trial by jury on all issues triable by right to a jury.

## IX. RELIEF REQUESTED

**WHEREFORE**, Plaintiff prays for the following relief:

(a)  An order certifying this case to proceed as a class action, designating Plaintiff as the Federal Class and Texas Subclass representative, and designating the undersigned as counsel for each class;

(b)  A declaration and injunctive relief altering or suspending ACE's and PRRS's Notice Fee Scheme;

(c)  actual damages;

(d)  statutory damages;

(e)  exemplary and/or punitive damages;

(f)  reasonable and necessary attorneys' fees;

(g)  prejudgment and post-judgment interest;

(h)  court costs; and

(i)  general relief.

22

Respectfully submitted,

THE LANIER LAW FIRM, P.C.

By: */s/ W. Mark Lanier*
W. Mark Lanier
mark.lanier@lanierlawfirm.com
Texas Bar No. 11934600
Kevin P. Parker
kevin.parker@lanierlawfirm.com
Texas Bar No. 15494020
Alex J. Brown
alex.brown@lanierlawfirm.com
Texas Bar No. 24026964
Alfred Mackenzie
alfred.mackenzie@lanierlawfirm.com
Texas Bar No. 12761550

10940 W. Sam Houston Pkwy N, Suite 100
Houston, TX 77064
Tel.: (713) 659-5200

-and-

VARTABEDIAN HESTER & HAYNES LLP

Craig A. Haynes
Texas Bar No. 09284020
craig.haynes@vhh.law
Robert C. Vartabedian
rob.vartabedian@vhh.law
Texas Bar No. 24053534
Daniella P. Main
Texas Bar No. 24120235
daniella.main@vhh.law

2200 Ross Avenue, Suite 4600E
Dallas, TX 75201
Tel.: (469) 654-1632

*Attorneys for Plaintiff*

23