UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT TOBEY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | § § § § § § § § § § § § § § § § | |
| *Plaintiffs*, | | |
| vs. | | Civil Action No. 3:24-cv-2932-X |
| ACE PARKING MANAGEMENT, INC. AND PARKING REVENUE RECOVERY SERVICES, INC., | | |
| *Defendants*. | | |

---

**DEFENDANT PARKING REVENUE RECOVERY SERVICES, INC.'S
BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF ROBERT
TOBEY'S CLASS ACTION COMPLAINT AND, ALTERNATIVELY,
TO STRIKE JURY DEMAND AND CLASS ALLEGATIONS**

---

**TABLE OF CONTENTS**

I.    **INTRODUCTION & SUMMARY** ...…….............................................................. 1

II.   **BACKGROUND FACTS & PLEADINGS** ....................................................... 3

III.  **ARGUMENTS & AUTHORITIES** ……….................................................... 8

    A.  The Complaint Fails To State A Claim Under Both the FDCPA And The TDCA ...…… 9

       i.  Tobey cannot plead he incurred the subject debt for personal, family, or household purposes ………………………………...………..….……..…....................................9

      ii.  Tobey cannot plead PRRS is a debt collector, and in fact the Notice of Non-Compliance attached to the Complaint shows that PRRS is a creditor ...................11

     iii.  Tobey cannot plead the subject debt was in default when he received the Notice of Non-Compliance …………………………………………….…........................13

     iv.  Neither the Notice of Non-Compliance nor Kelley's letters are false or misleading as a matter of law ………….…………………………………………………….13

          a.    Neither PRRS nor Kelley misrepresented PRRS's authority to assess the "Notice Fee" because, when Tobey parked on the Lot, he  agreed he was subject to additional fees for failing to follow the rules …………………14

          b.    Even the "least sophisticated consumer" could not construe either PRRS or Kelley as threatening Tobey with illegally towing, booting, or reporting the debt to a credit bureau …………………………….…………………….…...16

          c.    Kelley did not violate debt collection laws by sending letters to Tobey in a state where Kelley is not licensed to practice law ………………………. 18

          d.    Kelley's letters contain legally effective disclaimer language ….....…...... 19

    B.  The Complaint Fails To State A Claim Under The DTPA ………...…………….……... 21

    C.  Tobey Lacks Standing For Injunctive Relief …………………...…………………… 23

    D.  The Court Should Strike Tobey's Jury Demand And Class Action Allegations…...…… 24

IV.   **PRAYER** ………................................................................................................ 25

## TABLE OF AUTHORITIES

**CASES**                                                                                              **PAGE(S)**

*Agrelo v. Affinity Mgmt. Services, LLC*,

    841 F.3d 944 (11th Cir. 2016) …………………………………………………...… 9

*Ardoin v. Stryker Corp.*,

    No. 4:18-CV-2192, 2019 WL 4933600 (S.D. Tex. Oct. 7, 2019) …………….......…..………. 23

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009) ……………………………………………………………...… 8

*Associated Builders, Inc. v. Alabama Power Co.*,

    505 F.2d 97 (5th Cir. 1974) …………………………………………….…………. 12

*Avila v. Rubin*,

    84 F.3d 222 (7th Cir. 1996) ………………………………………………………... 20

*Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*,

    111 F.3d 1322 (7th Cir. 1997) ……………………………………………...…… 16

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544 (2007) …………………………………………………...……… 8

*Bracken v. Portfolio Recovery Assoc., LLC*,

    No. 3:20-CV-1991, 2021 WL 8441769 (N.D. Tex. Aug. 25, 2021), *report and*

    *recommendation adopted sub nom. Bracken v. Portfolio Recovery Associates*,

    No. 3:20-CV-1991, 2021 WL 8441747 (N.D. Tex. Sept. 9, 2021) ……………………….. 14, 17

*Bradford v. Vento*,

    48 S.W.3d 749 (Tex. 2001) …………………………………………………...……………. 23

*Brodsky v. Match.com, LLP*,

    No. 3-09-CV-2066, 2010 WL 3895513 (N.D. Tex. Sept. 30, 2010) ……………………… 21, 22

*Brumberger v. Sallie Mae Servicing Corp.*,

    84 Fed. Appx. 458 (5th Cir. 2004) ……………………………………….………………… 13

*Bullock v. Abbott & Ross Credit Services, L.L.C.*,

    No. A-09-CV-413, 2009 WL 4598330 (W.D. Tex. Dec. 3, 2009),

    *report and recommendation adopted*, No. A-09-CA-413, 2009 WL 10713334

    (W.D. Tex. Dec. 22, 2009) ……………………………………………………………... 9

*Calogero v. Shows, Cali & Walsh, L.L.P.*,
    970 F.3d 576 (5th Cir. 2020) ………………………………………………………… 9

*Carter v. Target Corp.*,
    541 Fed. Appx. 413 (5th Cir. 2013) ………….....……………………………....………… 12

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
    394 F.3d 285 (5th Cir. 2004) ………………………………………………......... 5

*Cohen v. Wolpoff & Abramson, LLP*,
    No. 08-1084, 2008 WL 4513569 (D.N.J. Oct. 2, 2008) …………………………...………. 19

*Daugherty v. Convergent Outsourcing, Inc.*,
    836 F.3d 507 (5th Cir. 2016) …………………………………...………………………. 17

*DeMarquis v. Alorica Inc.*,
    No. 1:20-CV-00634, 2021 WL 8018068 (W.D. Tex. Oct. 28, 2021),
    *report and recommendation adopted*, No. 1:20-CV-634, 2021 WL 8018065
    (W.D. Tex. Dec. 3, 2021) ……………………………………...…………………......… 11

*DeVere v. Gila Corp.*,
    No. A-08-C-148, 2008 WL 11333891 (W.D. Tex. Nov. 17, 2008) …………………………… 15

*DeVoll v. Demonbreun*,
    No. 04-14-00116, 2014 WL 7440314 (Tex. App.—San Antonio Dec. 31, 2014, no pet.) … 9, 10

*Diamond Beach Owners Ass'n v. Stuart Dean Co., Inc.*,
    No. 3:18-CV-00173, 2018 WL 7291722 (S.D. Tex. Dec. 21, 2018),
    *report and recommendation adopted*, No. 3:18-CV-00173, 2019 WL 245462
    (S.D. Tex. Jan. 17, 2019) ……………………………………………………………… 22

*Fiddick v. Bay Area Credit Serv., LLC*,
    No. 3:18-CV-00416, 2019 WL 1858824 (S.D. Tex. Apr. 25, 2019) …………...…………. 17

*Forby v. One Techs., LP*,
    No. 3:16-CV-856, 2020 WL 4201604 (N.D. Tex. July 22, 2020) …………………………… 25

*Franklin v. Apple Inc.*,
    569 F. Supp. 3d 465 (E.D. Tex. 2021) …………………….......................................... 21

*Franklin v. Parking Revenue Recovery Services, Inc.*,
    832 F.3d 741 (7th Cir. 2016) …………………….................................................. 15, 16, 24

*Garcia v. Jenkins Babb, L.L.P.*,

    569 Fed. Appx. 274 (5th Cir. 2014) …………………………………….…… 10

*Gonzalez v. Kay*,

    577 F.3d 600 (5th Cir. 2009) …………………………………………………… 20

*Gore v. Trans Union LLC*,

    No. 3:23-CV-1417, 2024 WL 898231 (N.D. Tex. Feb. 2, 2024), *report and*

    *recommendation adopted*, No. 3:23-CV-1417, 2024 WL 899377

    (N.D. Tex. Mar. 1, 2024), *appeal dismissed sub nom. Gore v. Higher Educ.*

    *Loan Auth.*, No. 24-10213, 2024 WL 4119914 (5th Cir. June 18, 2024) ………………........… 13

*Gulley v. Markoff & Krasny*,

    664 F.3d 1073 (7th Cir. 2011) ………………………………...…………………………… 15

*Hall v. Phenix Investigations, Inc.*,

    642 Fed. Appx. 402 (5th Cir. 2016) . ………………………...……………...………… 9

*Hansen v. Ticket Track, Inc.*,

    280 F. Supp. 2d 1196 (W.D. Wash. 2003) …………………………………….……….. 15

*In re Grab Holdings Ltd. Sec. Litig.*,

    No. 1:22-CV-02189, 2024 WL 1076277 (S.D.N.Y. Mar. 12, 2024) ………………….....…..... 4

*In re Katrina Canal Breaches Litig.*,

    495 F.3d 191 (5th Cir. 2007) ……………………………………………….……….. 5

*In re Online Travel Co.*,

    953 F. Supp. 2d 713 (N.D. Tex. 2013) ……………………………………...…….…… 24, 25

*Johnson v. Trugreen Ltd. P'ship*,

    No. A-12-CV-166, 2013 WL 12120460 (W.D. Tex. May 21, 2013) …………………………… 25

*Kelly v. Wolpoff & Abramson, L.L.P.*,

    634 F. Supp. 2d 1202 (D. Colo. 2008) …………………………….……….…….. 19

*Lease Acceptance Corp. v. Hernandez*,

    No. 13-18-00598, 2020 WL 1181248

    (Tex. App.—Corpus Christi–Edinburg Mar. 12, 2020, no pet.) ……………………… 10

*LeBlanc v. Unifund CCR Partners*,

    601 F.3d 1185 (11th Cir. 2010) ………………………………………….…… 17

*Lon Smith & Associates, Inc. v. Key*,

 527 S.W.3d 604 (Tex. App.—Fort Worth 2017, pet. denied) …………………………...… 23

*Madonna v. Acad. Collection Serv., Inc.*,

 No. 3:95 CV00875, 1997 WL 530101 (D. Conn. Aug. 12, 1997) ………....……..……... 18

 *Malsom v. Match.com, L.L.C.*,

  540 Fed. Appx. 412 (5th Cir. 2013)………………………………………………...21

*May v. Expedia, Inc.*,

 No. A-16-CV-1211, 2018 WL 4343445 (W.D. Tex. July 19, 2018)*,*

 *report and recommendation adopted*, No. 1:16-CV-1211,

 2018 WL 4343427 (W.D. Tex. Aug. 27, 2018) ..……………………...……………… 24, 25

*McMahon v. LVNV Funding, LLC*,

 744 F.3d 1010 (7th Cir. 2014) ……………………………….……………………… 17

*McPeters v. LexisNexis*,

 910 F. Supp. 2d 981 (S.D. Tex. 2012), *on reconsideration*,

 11 F. Supp. 3d 789 (S.D. Tex. 2014) …………………………………………………… 21

*Merritt v. Countrywide Fin. Corp.*,

 583 Fed. Appx. 662 (9th Cir. 2014) ……………………………...………………... 22

*Meyer v. Holley*,

 537 U.S. 280 (2003) …………………………………………………………... 14

*N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*,

 163 F.3d 449 (7th Cir. 1998) ………………………………………………………... 12

*Naranjo v. Nick's Management, Inc.*,

 652 F. Supp.3d 737 (N.D. Tex. 2023) ……………………………………………... 25

*Nichols v. Frederick J. Hanna & Associates, PC*,

 760 F. Supp. 2d 275 (N.D.N.Y. 2011) ……………………………………………… 19

*Obduskey v. McCarthy & Holthus LLP*,

 586 U.S. 466 (2019) . ……………………………………………...……… 11

*Parrales v. Aditya*,

 No. 3:21-CV-02974, 2022 WL 4073350 (N.D. Tex. Aug. 4, 2022),

 *report and recommendation adopted*, No. 3:21-CV-02974,

 2022 WL 4073345 (N.D. Tex. Sept. 2, 2022) ……………………………...……... 11

v

*Randolph v. IMBS, Inc.*,

    368 F.3d 726 (7th Cir. 2004) …………………………...…………………………………... 14

*Riley v. Houston Nw. Operating Co., L.L.C.*,

    No. H-19-2496, 2020 WL 3103899 (S.D. Tex. June 11, 2020) ...……………………………… 24

*Robinson v. Match.com, L.L.C.*,

    2012 WL 5007777 (N.D. Tex. Oct. 17, 2012), *aff'd sub nom.*

    *Malsom v. Match.com, L.L.C.*, 540 Fed. Appx. 412 (5th Cir. 2013) …………...………...… 21

*Rodriguez v. Fulton Friedman & Gullace, LLP*,

    No. H-11-4592, 2012 WL 3756589 (S.D. Tex. Aug. 28, 2012)  ……………………………. 20

*Rosa v. Mandarich Law Group, LLP*,

    No. 22-CV-4720, 2023 WL 4561830 (S.D.N.Y. July 17, 2023) .……………………..……. 15

*Sayles v. Advanced Recovery Sys., Inc.*,

    206 F. Supp. 3d 1210 (S.D. Miss. 2016), *aff'd*, 865 F.3d 246 (5th Cir. 2017) ……………...… 18

*Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*,

    638 Fed. Appx. 100 (2d Cir. 2016) ………………………...……………………………… 10

*Schmitt v. FMA All.*,

    398 F.3d 995 (8th Cir. 2005) …………………………...…………………………...……………… 14

*Steel Co. v. Citizens for a Better Env't*,

    523 U.S. 83 (1998)  ….…………………………………………...……………………… 24

*Stewart v. Alonzo*,

    No. C-08-347, 2009 WL 174938 (S.D. Tex. Jan. 26, 2009)  …………...…………..................... 9

*Strauss v. Ford Motor Co.*,

    439 F. Supp. 2d 680 (N.D. Tex. 2006) …………………………………………………….. 23

*Stringer v. Whitley*,

    942 F.3d 715 (5th Cir. 2019)  …………………………………………………………….. 24

*Taylor v. Perrin, Landry, deLaunay & Durand*,

    103 F.3d 1232 (5th Cir. 1997)  …………………………………….…………..…...……… 11

*Teng v. Metro. Retail Recovery Inc.*,

    851 F. Supp. 61 (E.D.N.Y. 1994) …………………………………………...……………… 14

*Thompson v. Resurgent Capital Services, L.P.*,

    No. 2:12-CV-01018, 2015 WL 12681653 (N.D. Ala. July 17, 2015) ……...……...………..… 17

*Tipping-Lipshie v. Riddle*,

  No. CV 99-4646, 2000 WL 33963916 (E.D.N.Y. Mar. 2, 2000) ……………………...……… 18

*Turner v. AmericaHomeKey Inc.*,

  No. 3:11-CV-0860, 2011 WL 3606688 (N.D. Tex. Aug. 16, 2011), *aff'd*,

  514 Fed. Appx. 513 (5th Cir. 2013) ……………………………………………….………. 21

*Wesner as Tr. of Charles Wesner, Jr. Living Tr. v. Southall*,

  No. 3:22-CV-0927, 2023 WL 3000623 (N.D. Tex. Apr. 18, 2023) …………………….…… 13

**RULES**

Fed. R. Civ. P. 9 ……………………….............................................................................. 21

Fed. R. Civ. P. 12(b)(6) ……………………………………………………………………1, 24

**STATUTES**

15 U.S.C. § 1692a(5)…………………….…....………………………...…………………… 9, 16

15 U.S.C. § 1692a(6)……………….…....………………………...………………….… 11

15 U.S.C. § 1692a(6)(F)……………….…....………………………...…………….....…… 13

15 U.S. § 1692e………………………………………………………………....…9, 14

15 U.S.C. § 1692e(5) ………………………………………………………….….. 17

15 U.S.C. § 1692f(6)……………….…....…………………………………….… 17

15 U.S.C. § 1692k……………………………………………………………...….……… 9

**CODES**

Tex. Bus. & Comm. Code § 17.45(5)……………….…....…………………………………… 22

Tex. Bus. & Comm Code § 17.46(2) …………………………………………………… 21

Tex. Bus. & Comm Code § 17.46(b) ………………………………………………………… 21

Tex. Bus. & Comm Code § 17.50(a) ……………………………………....…………… 21, 22

Tex. Fin. Code § 392.001……………………………………………………...……… 10, 16

Tex. Fin. Code § 392.101 …………………………………………………….…………10

Tex. Fin. Code § 392.301………………………………………………………….... 9

Tex. Fin. Code § 392.304 …………………………………………………………… 14

Tex. Occ. Code § 2308.252 ………………………………………………….…… 18

Tex. Occ. Code §2308.257 ……………………………………………....……….... 18

**OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY 1489-90 (7th ed. 1999) ……………………….............. 17

1 Kurt R. Mattson, *Fair Debt Collection Practices* § 1.06(6)(b) (2023)………..…......………... 15

Restatement of the Law, Consumer Contracts § 2 (2024) ……………………………….………..... 15

Defendant Parking Revenue Recovery Services, Inc. ("PRRS") files this Brief in support of its Motion to Dismiss the Class Action Complaint filed by Robert Tobey ("Tobey") pursuant to Rule 12(b)(6) and, Alternatively, to Strike the Jury Demand and Class Allegations ("Motion"). PRRS's Motion and Brief are subject to and without waiving PRRS's Motion to Compel Arbitration and Stay Proceedings filed concurrently herewith.

## I.    INTRODUCTION & SUMMARY

Tobey, a prominent Dallas attorney, parked in a private lot to attend a hearing at the George Allen Courthouse. *See* Compl. [Dkt. 1] ¶ 36 n.13. He overstayed the time for which he paid to park at the lot. Now, although he admittedly parked at the lot for his business purposes, Tobey is the plaintiff in a putative *consumer* class action lawsuit.

PRRS monitors the subject lot for compliance with the parking rules, and posts large, conspicuous, red signs on the lot advising visitors like Tobey that—by parking on the lot—they also accept PRRS's terms. These terms include additional fees owed to PRRS should the parker (a) fail to pay for parking entirely or (b) overstay the parking visit for which the parker paid. Tobey's Complaint admits he overstayed his parking visit. Thus, PRRS flagged Tobey for violating the parking rules and sent him a notice advising that he had been assessed a fee pursuant to the terms to which he agreed by parking on the subject lot. Tobey paid the fee and then turned around and brought this lawsuit.

Tobey primarily asserts claims under the Fair Debt Collection Practices Act ("FDCPA") and the Texas Debt Collection Act ("TDCA"), alleging PRRS was a "debt collector" and made misrepresentations with regard to charging and recovering the fee. But Tobey fails to state (and cannot state) facts sufficient to plead a plausible claim for relief under either statute. In fact, Tobey's own Complaint provides ample support to dismiss his claims. Accordingly, Tobey's FDCPA and TDCA claims should be dismissed *with prejudice*.

1

For example, Tobey's "debt collection" claims fail for three inescapable reasons. **First**, Tobey admits he parked on the lot for a commercial purpose—to attend a hearing as part of his practice of law. Both the FDCPA and TDCA apply only to debts incurred for personal, family, or household purposes. Thus, Tobey cannot state a claim for relief under either statute because the debt he owed falls outside the FDCPA's and TDCA' s regulatory framework.

**Second**, among other things, the notice Tobey received from PRRS (attached to the Complaint) demonstrates PRRS is a creditor exempt from regulation under the FDCPA because PRRS is attempting to collect amounts owed to itself—*not a third party*. PRRS identified itself as Tobey's creditor and directed Tobey to clear his account *with PRRS*. Additionally, the notice states that the debt was not yet in default, which again makes it exempt from "debt collector" regulation.

**Third**, even *assuming arguendo* that (i) Tobey's "debt" was not commercial (which it is) and PRRS is a debt collector (which it is not), the notice Tobey received from PRRS and the letters he received from attorney Daniel B. Kelley ("Kelley") (attached to the Complaint) are not false or deceptive as a matter of law. No law requires Kelley to be licensed as an attorney in Texas to initiate any alleged collection activities in Texas. Further, Kelley's letters contain legally effective disclaimer language sufficient to put even the least sophisticated consumer (much less a seasoned and sophisticated attorney such as Tobey) on notice of when Kelley's office was (or was not) actively involved in pursuing the subject debt.

Furthermore, the subject communications attached to the Complaint do not *threaten* Tobey with subsequent collection actions. PRRS (and Kelley) only advised Tobey of some potential consequences of ignoring the debt (*e.g.*, boot or tow his vehicle or accurately report the debt to a credit bureau, as permissible by law), which even the least sophisticated consumer (whom Tobey is not) should expect from a creditor seeking payment of an amount due.

2

Tobey's ancillary claims under the Texas Deceptive Trade Practices Act ("DTPA") and claim for injunctive relief must similarly be dismissed for at least three reasons. **First**, Tobey pleads no facts stating he relied on PRRS's alleged "laundry list" violations to his detriment. **Second**, Tobey does not plead PRRS took advantage of *his* knowledge or experience to a grossly unfair degree (nor could he plausibly do so). **Third**, Tobey pleads no facts showing he faced a continuing or future harm based on PRRS's supposed "Notice Fee Scheme[.]" Accordingly, Tobey's Complaint should be dismissed in its entirety, *with prejudice*.

With respect to PRRS's alternative request to strike, the terms of the agreement between Tobey and PRRS contain both a "Class Action Waiver" and "Waiver of Jury Trial." Courts have construed similar agreements to constitute an enforceable contract. Therefore, in the alternative, the Court should strike both Tobey's jury demand and his class action allegations.

## II.      BACKGROUND FACTS & PLEADINGS

On June 11, 2024, Tobey parked in a private parking lot located at 900 Main Street in Dallas, Texas, across from the Earl Cabell Federal Building (the "Lot").[1] *See* Compl. ¶ 36. Visitors like Tobey may freely enter and exit, but cannot actually park in the Lot without paying to park there. *See* Id. ¶ 37. Tobey entered the Lot at 8:56 am (*See* Id., Ex. A) and paid $15 at a kiosk to park for two hours. *See* Id.¶ 37. He received a ticket indicating his parking time ended at 10:56 am. *See* id., Ex. E. He then attended a hearing at the George Allen Courthouse. *See* Id. ¶ 36 n.13.

PRRS is a parking monitoring and compliance company that employs real-time monitoring technology to monitor parking compliance at lots with free flow entrances and exits, like the Lot. *See* Id. ¶¶ 7, 37, 39. Among other things, PRRS utilizes license plate reader technology to monitor when a vehicle enters and exits a parking lot. *See* Id. ¶ 9. PRRS then determines how long a visitor

---

[1] For purposes of this Brief, PRRS references the facts alleged in the Complaint without admitting or denying the veracity of the allegations.

3

reserved space on the lot. *See Id.* If someone violates the parking facilities' rules, PRRS charges

them a "Notice Fee." *See Id.* In addition to its monitoring and compliance functions, PRRS offers

the following services: "notice/invoice[2] and data management;" "notice dispute processing;"

"payment processing;" and "real time analytics and reporting." *See Id.* ¶ 7.

Tobey admits PRRS signage posted on the Lot advised him that failure to abide by the

parking rules could result in "additional fees up to $250.00 per violation[.]" *See Id.* ¶ 38. Indeed,

the following is an excerpt from the large and conspicuous red sign posted throughout the Lot:



---

[2] Tobey cites to, but mischaracterizes, PRRS's home webpage, which describes a "notice/invoice" service, not a "citation" service. *See* Compl. ¶ 7; *cf.* https://prrsparking.com. This is a distinction with a difference. *See* FN 9, *infra*. The Court may consider the webpage itself, not just Tobey's inaccurate allegations, because he incorporates it into his Complaint. *See In re Grab Holdings Ltd. Sec. Litig.*, 2024 WL 1076277, at *3 n.1 (S.D.N.Y. Mar. 12, 2024). PRRS does not issue "citations."

App. at 5, **Ex. A-1** (attaches a complete picture of the sign).[3]

Further, attached to the Complaint is a photograph of two payment kiosks located on the Lot, both of which also prominently display red PRRS signs stating there is "NO FREE PARKING AT ANY TIME[.]" *See* Compl., Ex. D (emphasis in original).[4] The signs on the kiosks also state that "[t]his Lot's rules and use limitations are strictly enforced by Parking Revenue Recovery Services, Inc." App. at 11, **Ex. A-4**. Additionally, the signs state that "[v]ehicles failing to comply with Lot rules will be charged additional parking fees" and "[u]npaid parking fees will be assigned for collection to a debt collector." *Id.* The specific PRRS signage Tobey references in his Complaint clearly states "[t]his is a contract" and that "[b]y parking on this facility you accept all these terms." *Id.* at 5, **Ex. A-1**. The signage also states, "[b]y parking on this Lot, you hereby agree that the sole remedy for an unresolved dispute is binding arbitration and specifically waive the right to a jury trial, class action and/or class arbitration." *Id.* at 11, **Ex. A-4**.

Tobey did not drive off the Lot until 11:07 am, overstaying his two-hour parking session by 11 minutes and without paying for the additional time. *See* Compl. ¶ 39, Ex. A. PRRS identified Tobey's vehicle through surveillance video and determined precisely when Tobey entered and

---

[3] PRRS includes with its Appendix the Declaration of Christopher Conley, which attaches photographs of the signage at the Lot referenced in the Complaint. Courts may review contracts attached to a motion to dismiss without converting the motion to one for summary judgment if "the contracts are central to the plaintiffs' claims." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). The PRRS contract is essential to Tobey's claims because, despite acknowledging the existence of the signage, Tobey alleges PRRS has no legal authority to assess the "Notice Fee" to which he agreed by parking on the Lot. *See* Compl. ¶ 43. Tobey quotes from the PRRS signage in his Complaint but, among other things, omits the language advising him that by parking on the Lot, he agreed to "contract" with PRRS for the time period during which he was not in compliance with the use rules, as well as other terms posted on the signs throughout the Lot. *See* Id. ¶ 38.

[4] The wording on the signs is difficult to read from the photograph attached to the Complaint. *See* Compl., Ex. D. So, PRRS includes with its Appendix another photograph of one of the signs at issue, in which the referenced language is more discernable. App. at 11, **Ex. A-4**.

exited the Lot. *See* Id., Ex. A. More specifically, PRRS determined that Tobey's parking ticket expired at 10:56 am and that he did not drive off the Lot until 11:07 am. *See* Id., Exs. A, C. Tobey does **not** contest in the Complaint that he overstayed his allotted time by 11 minutes. Nor does he claim to have paid for it. *See, e.g.,* Id. ¶ 39.

On June 16, 2024, PRRS issued a "Notice of Non-Compliance" to Tobey for his failure to abide by the parking rules for the Lot. *See* Compl., Ex. A. This letter identifies PRRS as the "Issuer/Creditor[.]" *See Id.* It also explicitly states that, "*after 30 days from the date of the notice, the account will be considered in default and assigned to a debt collector*." *See Id.* (emphasis in original). The Notice of Non-Compliance contains photographs of Tobey's vehicle, showing when he entered and exited the Lot. *See* Id. It also expressly identifies the amount of the debt by assessing the $90 "Notice Fee" for overstaying the time limit on his parking session. *See* Id.

The Notice of Non-Compliance stated Tobey could either dispute the "Notice Fee" with PRRS or remit payment directly to PRRS. *See* Id., Ex. A. It states PRRS is "*NOT* a *governmental or affiliated agency*." *See* Id. (emphasis in original). It also advises that Tobey's vehicle "*may be subject to towing or booting, and the owner may be liable for additional costs and fees, to the extent permitted by law*." *See* Id. (emphasis in original). Tobey does not allege he paid PRRS in reliance upon any of the statements contained in the Notice of Non-Compliance. Nor does he allege that, in assessing the "Notice Fee," PRRS took advantage of his lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

On July 28, 2024, attorney Daniel B. Kelley ("Kelley") mailed a letter to Tobey stating Kelley's law firm represented "the Creditor named below," which the letter identified as PRRS ("First Kelley Letter"). *See* Compl., Ex. B. This letter explained Tobey's "vehicle received a Parking Notice from Parking Revenue Recovery Services, Inc." *See* Id. It identified the Notice of

Non-Compliance by number and the $90 "Notice Fee." *See* Id. The letter further specifies the ways in which Tobey could clear his account, including by paying PRRS directly. *See* Id. At the bottom of the front page of the letter there is a prominent notice that reads: "**NOTICE: SEE REVERSE SIDE FOR ADDITIONAL INFORMATION**[.]" *See* Id. (emphasis in original).

On the reverse side, following another prominent notice "**<u>FOR ALL CONSUMERS</u>**[,]" the letter explains that: "Although this letter is from a law firm, at this time no attorney has independently evaluated your case or made any recommendations regarding the validity of the creditor's claims or personally reviewed the particular circumstances of the Parking Notice." *See* Id. The letter further clarifies that "[t]his is an initial communication to collect a debt only" and "NOT a threat to file a lawsuit." *See* Id. Also, the letter advises that, should PRRS choose to "pursue legal remedies in court, then this matter will be forwarded to an attorney licensed in your state of residence for further proceedings." *See* Id. Tobey does not allege that he was confused, misled, or intimidated by the First Kelley Letter (nor can he). He does not state whether he paid the "Notice Fee" in reliance upon the letter's statements or how Kelley acted as anything other than PRRS's independent contractor.

On September 5, 2024, Kelley sent a follow-up letter to Tobey ("Second Kelley Letter"). *See* Compl., Ex. C. The letter states: "Our office has read your appeal and/or dispute and reviewed the documentation provided." *See* Id. The letter explains that "[t]he notice is upheld, as the posted instructions in the parking lot were not properly followed" and, thus, "[t]he amount due is $90.00." *See* Id. Further, the letter states "Parking Revenue Recovery has referred this parking notice to our office as a valid debt for collections." *See* Id. The Second Kelley Letter again encourages Tobey to pay PRRS directly. *See* Id. It also advises that PRRS reserved the right "to report this debt to one or more of the credit bureaus after expiration of [sic] thirty-day dispute period" and that "the

7

parking company" could take further action to include "booting or towing your vehicle where the law allows." *See Id.* Finally, the letter states: "**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**." *See Id.* (emphasis in original).

After paying the "Notice Fee," Tobey filed his Class Action Complaint against PRRS and ACE Parking Management, Inc. ("ACE"). He primarily alleges PRRS violated the FDCPA and TDCA. *See* Compl. ¶¶ 51-65. He also alleges PRRS violated the "laundry list" provision of the DTPA and that PRRS's conduct constitutes an "unconscionable action" giving rise to an additional claim under the DTPA. *See Id.* ¶¶ 70-73. Tobey does not allege facts as to whether PRRS took advantage of *his* lack of knowledge, skill, experience, or capacity to a grossly unfair degree. Tobey also cites the alleged violations of the TDCA as additional grounds for relief under the DTPA. *See Id.* ¶ 72. He also requests a permanent injunction preventing PRRS from perpetrating the amorphously alleged "Notice Fee Scheme[.]" *See Id.* ¶ 78. Tobey offers nothing save the following: "Plaintiff has suffered an irreparable injury, including lost time and mental anguish from ACE's and PRRS's illegal threats and simple monetary damages are inadequate to compensate for this injury." *See Id.* ¶ 80. Finally, he demands a jury trial and includes class action allegations. *See Id.* ¶¶ 21-35, 83.

### III.    ARGUMENTS & AUTHORITIES

Plaintiffs must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is not sufficient to plead "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 664.

8

A.     **The Complaint Fails To State A Claim Under Both The FDCPA And The TDCA.**

The FDCPA prohibits the use of "false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To enforce the statute's purpose, Congress authorized civil actions against unscrupulous debt collectors. 15 U.S.C. § 1692k (allowing recovery of "actual damage" sustained). "[T]o prevail on a FDCPA claim, the plaintiff must prove: (1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Stewart v. Alonzo*, 2009 WL 174938, at \*2 (S.D. Tex. Jan. 26, 2009). Similarly, "[a] consumer may sue under the TDCA for threats, coercion, harassment, abuse, unconscionable collection methods, or misrepresentations made in connection with the collection of a debt." *DeVoll v. Demonbreun*, 2014 WL 7440314, at \*2 (Tex. App.—San Antonio Dec. 31, 2014, no pet.) (citing Tex. Fin. Code § 392.301 *et seq.*).[5]

i.     **Tobey cannot plead he incurred the subject debt for personal, family, or household purposes.**

To state an FDCPA claim, "Plaintiffs must first allege that they have been the object of collection activity arising from 'debt.'" *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 581 (5th Cir. 2020) (quoting *Hall v. Phenix Investigations, Inc.*, 642 Fed. Appx. 402, 405 (5th Cir. 2016)). "Debts" are "'payment obligations of a consumer arising out of a transaction in which the money, property, insurance, or services at issue are primarily for personal, family or household purposes." *Calogero*, 970 F.3d at 581 (cleaned up) (quoting *Agrelo v. Affinity Mgmt. Services, LLC*, 841 F.3d 944, 950 (11th Cir. 2016)); *see also* 15 U.S.C. § 1692a(5). The TDCA mirrors its federal

---

[5] *Bullock v. Abbott & Ross Credit Services, L.L.C.*, 2009 WL 4598330, at \*2 n.3 (W.D. Tex. Dec. 3, 2009), *report and recommendation adopted*, 2009 WL 10713334 (W.D. Tex. Dec. 22, 2009) ("The same actions that are unlawful under the FDCPA are also unlawful under the TDCA").

analog, defining "consumer" as an individual who has a "consumer debt[,]" which is defined as an "alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." Tex. Fin. Code §§ 392.001(1), (2).

Tobey does not allege, nor could the Court infer, that he incurred a protected consumer debt for personal, family, or household purposes. This deficiency alone justifies dismissal. *Garcia v. Jenkins Babb, L.L.P.*, 569 Fed. Appx. 274, 276-77 (5th Cir. 2014) (affirming dismissal of FDCPA and TDCA claims when complaint "lacked any facts to suggest" the "debt was incurred through a consumer transaction"); *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 Fed. Appx. 100, 103 (2d Cir. 2016) (affirming dismissal of FDCPA claim because plaintiff "did not include any factual allegations in his Complaint to support the inference that the amount in dispute arose from a consumer transaction, and, accordingly, he failed to state a claim upon which relief could be granted"); *DeVoll*, 2014 WL 7440314, at *2 (dismissing TDCA claim because plaintiff "failed to allege facts that would show that . . . the judgment at issue is a consumer debt"); *Lease Acceptance Corp. v. Hernandez*, 2020 WL 1181248, at *4 (Tex. App.—Corpus Christi–Edinburg Mar. 12, 2020, no pet.) (agreeing that "the TDCA is the improper vehicle for a claim where the debt at issue is a commercial debt"). Tobey actually pleads facts demonstrating he incurred the subject debt for commercial purposes. He pleads the purpose of his parking session was to engage in his business as a lawyer. *See* Compl. ¶ 36 n.13. Thus, the debt falls outside the protections of the statutes, and Tobey's claims should be dismissed *with prejudice*. *See, e.g., Hall*, 642 Fed. Appx. at 405 ("[t]he commercial nature" of the debt "dooms Plaintiffs' FDCPA claim"). [6]

---

[6] Dismissal of the TDCA claim also justifies dismissing Tobey's "tie-in" DTPA claim for the same alleged violation. *See* Compl. ¶ 72. Further, because PRRS was not attempting to collect a "consumer debt" as defined under the TDCA, it is necessarily *not* a "third-party debt collector" who must post a surety bond. *See* Tex. Fin. Code §§ 392.001, 392.101.

ii.     **Tobey cannot plead PRRS is a debt collector, and in fact the Notice of Non-Compliance attached to the Complaint shows that PRRS is a creditor.**

The FDCPA only regulates "debt collectors." *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 468 (2019). A "debt collector" is "any person who uses . . . interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "Not all those who collect debt meet the FDCPA's definition of debt collector." *Parrales v. Aditya*, 2022 WL 4073350, at *2 (N.D. Tex. Aug. 4, 2022), *report and recommendation adopted*, 2022 WL 4073345 (N.D. Tex. Sept. 2, 2022).

Tobey alleges PRRS "'is a leading provider of fully integrated parking compliance, customer service/dispute processing, and access monitoring services.'" *See* Compl. ¶ 7. He further alleges PRRS was "'one of the first companies to automate parking monitoring and compliance programs using a software-based solution[.]'" *See Id.* Tobey even acknowledges that PRRS does far more than charge "Notice Fees" like the one at issue in this case—PRRS provides parking lot monitoring and real time analytics and reporting services. *See Id.* Tobey pleads no facts from which the Court can plausibly infer the "principal purpose" of PRRS's business is the collection of "Notice Fees." *See* 15 U.S.C. § 1692a(6). Nor does he plead facts from which the Court may infer PRRS regularly collects debts "owed or due to another." *See Id.* He pleads only "threadbare recitals of statutory language and conclusory allegations." *See* Compl. ¶ 54 (reciting statutory definition of "debt collector"); *see, e.g., DeMarquis v. Alorica Inc.*, 2021 WL 8018068, at *2 (W.D. Tex. Oct. 28, 2021), *report and recommendation adopted*, 2021 WL 8018065 (W.D. Tex. Dec. 3, 2021).

Further, the FDCPA does not apply to "creditors who, directly or indirectly, try to collect debts owed them[.]" *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1234 (5th Cir.

11

1997) (quoting 15 U.S.C. § 1692a(4)). Tobey attempts to plead his way around this exception by alleging PRRS assessed the subject fee "on behalf of a private party." *See* Compl. ¶¶ 12, 44. But that allegation is unmoored to any other fact and is directly contradicted by the Notice of Non-Compliance attached to Tobey's Complaint. *See* Id., Ex. A. In other words, despite the actual Notice of Non-Compliance attached to the Complaint that confirms otherwise, Tobey vaguely alleges PRRS attempted to collect the "Notice Fee" on behalf of some other "private party" (as opposed to collecting the "Notice Fee" on behalf of itself). *See Id.* ¶¶ 12, 44.

The Court need not credit Tobey's factual allegations as truthful when the attachments to his Complaint tell a different story. *E.g., N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations"); *Carter v. Target Corp.*, 541 Fed. Appx. 413, 417 (5th Cir. 2013) ("'[c]onclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint'") (quoting *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

The Notice of Non-Compliance unequivocally demonstrates PRRS was *not* collecting for another party. *See* Compl., Ex. A. It identifies PRRS as the creditor and issuer of the "Notice Fee," identifies the amount of the debt, and requests Tobey pay PRRS directly. *See* Id.[7]  Moreover, the Notice of Non-Compliance is consistent with the large, red, posted signs indicating the Lot's "use limitations are strictly enforced by [PRRS]." App. at 5-17, **Exs. A-1 through A-7**. Thus, PRRS, as the creditor, falls outside the purview of the FDCPA. Tobey does not (and cannot) plausibly state

---

[7] Kelley's letters, attached to the Complaint, reiterate PRRS is the party issuing the $90 fee and that Tobey could clear his account by settling the debt directly with PRRS. *See* Compl., Exs. B, C.

12

a claim for relief against PRRS because the language in the contract and the Notice of Non-Compliance (attached to his Complaint) demonstrate PRRS's activities are not governed by the FDCPA. This is another reason the Court must dismiss Tobey's claim *with prejudice.*

### iii.    Tobey cannot plead the subject debt was in default when he received the Notice of Non-Compliance.

Under the FDCPA, the term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent the activity . . . concerns a debt which was not in default at the time it was obtained by such person[.]" 15 U.S.C. § 1692a(6)(F). A plaintiff must prove the "default" element before he or she can recover under the FDCPA. *See, e.g., Brumberger v. Sallie Mae Servicing Corp.*, 84 Fed. Appx. 458, 459 (5th Cir. 2004); *see also Wesner as Tr. of Charles Wesner, Jr. Living Tr. v. Southall*, 2023 WL 3000623, at *7 (N.D. Tex. Apr. 18, 2023) ("A person is not a debt collector if he is attempting to collect a debt that was not in default when he obtained it").

Tobey does not allege, nor can he, that the subject debt was in default at the time he received the Notice of Non-Compliance, which states the opposite. *See* Compl., Ex. A ("*After **30 days** from the date of the notice, the account will be considered in default and assigned to a debt collector*") (emphasis in original). For this additional reason, the Court should dismiss the FDCPA claim *with prejudice. See, e.g., Gore v. Trans Union LLC*, 2024 WL 898231, at *6 (N.D. Tex. Feb. 2, 2024), *report and recommendation adopted*, 2024 WL 899377 (N.D. Tex. Mar. 1, 2024), *appeal dismissed sub nom. Gore v. Higher Educ. Loan Auth.*, 2024 WL 4119914 (5th Cir. June 18, 2024) (granting judgment on pleadings when plaintiff "has not alleged that a student loan . . . was in default" and therefore has not alleged that defendant "is a debt collector under the FDCPA").

        **iv.**      **Neither the Notice of Non-Compliance nor Kelley's letters are false or misleading as a matter of law.**

Both the FDCPA and TDCA only prohibit "abusive debt collection practices" or debt collection activities that are otherwise "fraudulent, deceptive, or misleading[.]" 15. U.S.C. 1692e; Tex. Fin. Code § 392.304. The act of collecting a debt is lawful in and of itself. Indeed, one of the FDCPA's stated purposes is to "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged[.]" *Id.* Many debt collection activities are not "false or deceptive as a matter of law[.]" *Bracken v. Portfolio Recovery Assoc., LLC*, 2021 WL 8441769, at *3 (N.D. Tex. Aug. 25, 2021), *report and recommendation adopted sub nom. Bracken v. Portfolio Recovery Associates, LLC*, WL 8441747 (N.D. Tex. Sept. 9, 2021). So, even *assuming arguendo* that: (i) the "Notice Fee" is a consumer debt and subject to protection (it is not), and (ii) Tobey could plausibly allege PRRS is liable due to Kelley's letters (he cannot),[8] as a matter of law, Tobey *still cannot* allege a viable claim against PRRS because the Notice of Non-Compliance and Kelley's letters are neither false nor deceptive. *Id.*

        **a.**      **Neither PRRS nor Kelley misrepresented PRRS's authority to assess the "Notice Fee" because, when Tobey parked on the Lot, he agreed he was subject to additional fees for failing to follow the rules.**

---

[8] Even assuming PRRS is a debt collector that attempted to collect a consumer debt (none of which Tobey could plausibly allege), PRRS's acts only extend to the Notice of Non-Compliance. The Complaint does not allege any facts (nor could it) sufficient to infer an agent-principal relationship between PRRS and Kelley that would make PRRS liable for any act taken by Kelley. *See Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules"); *see also, e.g., Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004) ("debt collectors are independent contractors; an agent or employee of the creditor is not covered by the Act in the first place"); *Schmitt v. FMA All.*, 398 F.3d 995, 997 (8th Cir. 2005) (affirming dismissal of claims against debt collector even though creditor had actual knowledge debtor was represented by counsel because "the FDCPA requires a plaintiff to plead that the debt collector has actual knowledge of the plaintiff's representation" and creditor's knowledge was not imputed to debt collector); *Teng v. Metro. Retail Recovery Inc.*, 851 F. Supp. 61, 67 (E.D.N.Y. 1994) (dismissing claims against creditor because debt collector "was an independent contractor in this situation" and plaintiff "failed to establish any liability against" creditor).

Tobey alleges PRRS had no "lawful authority" to assess the "Notice Fee," and the Kelley letters violated both the FDCPA and the TDCA by misrepresenting that PRRS "is legally authorized to impose a fine[.]"[9] *See* Compl. ¶¶ 43, 55, 63. Tobey implies no contractual relationship exists between himself and PRRS, despite conceding the existence of PRRS signage stating, *inter alia,* he was subject to a fee for failing to comply with the parking rules.[10] *See Id.* ¶ 38.

Tobey, however, cannot escape that he entered into a contract as matter of law, and thus is subject to the terms of that agreement.[11] Indeed, even by pleading PRRS is a "debt collector" attempting to collect a "debt," Tobey judicially admits the existence of a contract and cannot escape its terms—regardless of the black letter law establishing the existence of such a contract by Tobey

---

[9] The Notice of Non-Compliance does not refer to the "Notice Fee" as a "fine." *See* Compl. Ex. A. Tobey blurs the line between "fines" and "fees" to further his argument that PRRS deceptively represented itself as a government affiliate. *See, e.g., Id.* ¶ 55(d); *see also Gulley v. Markoff & Krasny*, 664 F.3d 1073, 1074 (7th Cir. 2011) (agreeing with district court "that a fine is a penalty imposed for breaking the law—not the result of a consensual transaction"). But, not only did PRRS *not* label the "Notice Fee" a "fine," it also expressly stated that PRRS had no affiliation with the government. *See* Compl*.,* Ex. A    (stating PRRS "*is NOT a government or affiliated agency*") (emphasis in original). So, even if PRRS had labeled the "Notice Fee" a "fine," a consumer would still not be misled regarding PRRS's governmental affiliation (or lack thereof). Typically, such confusion could only (reasonably) result when the debt collector makes overt efforts to mislead. *Rosa v. Mandarich Law Group, LLP*, 2023 WL 4561830, at *7 (S.D.N.Y. July 17, 2023) ("includ[ing] falsely claiming to be a law officer in order to locate or repossess collateral, claiming governmental affiliation in order to facilitate skip-tracing efforts, or using the return address of a government agency on an envelope") (quoting 1 Kurt R. Mattson, *Fair Debt Collection Practices* § 1.06(6)(b) (2023)).

[10] Tobey further disputes he agreed to binding arbitration and waived his right to classwide litigation. *See* Compl. ¶ 45 ("customers did no such thing by simply parking their car in a lot"). As shown herein, Tobey did contract with PRRS, and his agreement to arbitrate is the subject of PRRS's Motion to Compel Arbitration and Stay Proceedings being filed concurrently herewith.

[11] Restatement of the Law, Consumer Contracts § 2 (2024) ("A consumer parks a car in a private parking lot. By entering the lot, the consumer manifests assent to the transaction concerning the use of the parking lot, and the terms posted on the sign are adopted"); *see also, e.g., Hansen v. Ticket Track, Inc.*, 280 F. Supp. 2d 1196, 1202 (W.D. Wash. 2003) (holding that an obligation to pay parking fees and associated late fees arose out of contract between the parking lot and the parker); *DeVere v. Gila Corp.*, 2008 WL 11333891, at *3 (W.D. Tex. Nov. 17, 2008) (discussing implied contract between parking lot and parker).

15

parking in the Lot. *See, e.g., Franklin v. Parking Revenue Recovery Services, Inc.*, 832 F.3d 741, 744 (7th Cir. 2016).

The FDCPA defines "debt" as "arising out of a transaction." 15 U.S.C. §1692a(5) (defining "debt"); *see also* Tex. Fin. Code § 392.001(2). While the FDCPA itself "does not define 'transaction,' it is a broad reference" to business dealings between parties. *Frankin*, 832 F.3d at 744 (citing *Bass v. Stolper, Koritzinsky, Brewster, & Neider, S.C.*, 111 F.3d 1322, 1325 (7th Cir. 1997)). And importantly, the statute's use of the term "arising out of" necessarily means the FDCPA only reaches obligations "created by contracts the parties used to give legal force to the transaction." *Frankin,* 832 F.3d at 744. Just as in *Franklin*, the PRRS signs advised of the consequences for failing to pay as required. *Id.* at 745. Visitors "accepted this offer—and thus formed a contract—when they parked in the lot." *Id.* Tobey's obligation to pay the "Notice Fee" is "premised entirely on this contract." *Id.* By virtue of its contract with Tobey and its legal rights, PRRS lawfully charged the "Notice Fee" based on Tobey's failure to abide by the parking rules. Thus, the Notice of Non-Compliance and Kelley's letters accurately represent his obligations.[12]

> **b. Even the "least sophisticated consumer" could not construe either PRRS or Kelley as threatening Tobey with illegally towing, booting, or reporting the debt to a credit bureau.**

Tobey also alleges PRRS and Kelley "threatened" activity Tobey claims PRRS either has no authority to take or that PRRS did not intend to take when it made the threat—including towing or booting Tobey's vehicle and reporting the debt to one or more credit bureaus. *See* Compl. ¶¶ 45,

---

[12] Curiously, Tobey alleges the "Notice Fee" is "undisclosed prior to being levied[.]" *See* Compl. ¶ 9. But, at the same time, he acknowledges the PRRS signage advised that he "will be assessed additional fees up to $250.00[.]" *See Id.* ¶ 38. So, to the extent Tobey tacitly alleges a misrepresentation based on the supposed non-disclosure of the "Notice Fee," this allegation is belied by Tobey's own, contradictory pleadings, and the signage shown in full in PRRS's appendix. Indeed, the "Notice Fee" that Tobey now alleges is so "outrageous" was much less (*i.e.*, $90) than the maximum fee Tobey agreed to pay by parking in the Lot— as stated on PRRS sign.

16

70. But Tobey's allegations fail the threshold test of whether there was a "threat" at all under 15 U.S.C. §§ 1692e(5), 1692f(6).[13] While the "FDCPA does not define what constitutes a 'threat[]' Black's Law Dictionary defines 'threat' as 'a communicated intent to inflict harm or loss on another or another's property . . . [or] an indication of an approaching menace [such as] the threat of bankruptcy.'" *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1195 (11th Cir. 2010) (quoting BLACK'S LAW DICTIONARY 1489-90 (7th ed. 1999)).

Through the lens of the "least sophisticated consumer," courts consider whether the alleged statements at issue could be considered as communicating intent to inflict harm or loss on the consumer or their property. *See LeBlanc*, 601 F.3d at 1195. Communications that are "merely informative" are not threats. *Thompson v. Resurgent Capital Services, L.P.*, 2015 WL 12681653, at *3 (N.D. Ala. July 17, 2015) (quoting *Leblanc*, 601 F.3d at 1195). The "least sophisticated consumer" is "neither shrewd nor experienced in dealing with creditors." *Bracken*, 2021 WL 8441769, at *2. Courts dismiss claims if "'not even a significant fraction of the population would be misled.'" *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 512 (5th Cir. 2016) (quoting *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019 (7th Cir. 2014)).[14]

Here, Tobey—who is not an unsophisticated "consumer"—misconstrues the "threats" he claims are contained within the Notice of Non-Compliance and Kelley's letters. Neither PRRS nor Kelley stated they would in fact tow or boot Tobey's vehicle. *See* Compl., Ex. A (stating Tobey's

---

[13] Even if Kelley's letters did somehow violate the FDCPA, Tobey fails to plausibly allege how PRRS is liable for any such violation. *See* FN 8, *supra.*

[14] Federal courts will interpret the TDCA the same way they interpret the FDCPA. *Fiddick v. Bay Area Credit Serv., LLC*, 2019 WL 1858824, at *4 (S.D. Tex. Apr. 25, 2019) ("Because the FDCPA and TDCA are isomorphic (that is, they share the same general structure but are identified by different names), the same analysis this Court applied to assess the sufficiency of the FDCPA claim will be utilized to determine the adequacy of the TDCA claim"). Therefore, any argument as to why the Notice of Non-Compliance and Kelley's letter do not violate the FDCPA applies with equal force to Tobey's Claims under the TDCA.

17

vehicle "**may** be subject to towing or booting . . .  to the extent permitted by law") (emphasis added); *See* Id., Ex. C ("the parking company . . . **could**" take additional action "including booting and/or towing your vehicle where the law allows") (emphasis added). Nor did Kelley state either he or PRRS would in fact report the debt to a credit bureau. *See* Id. (noting that PRRS "**reserve[s] the right** to report this debt to one or more of the credit bureaus") (emphasis added).

Courts have found informative statements do not amount to "threats" under the FDCPA. *See, e.g., Madonna v. Acad. Collection Serv., Inc.*, 1997 WL 530101, at *7 (D. Conn. Aug. 12, 1997) ("Far from threatening legal action, the statement that the creditor '**may** choose to pursue legal action,' indicates that legal action is an option available to the creditor, who **may** indeed choose to take advantage of it") (emphasis in original); *see also, e.g., Tipping-Lipshie v. Riddle*, 2000 WL 33963916, at *5 (E.D.N.Y. Mar. 2, 2000) ("The statement that litigation **may** be commenced prior to the expiration of the thirty day validation period is not a threat of action prohibited by the FDCPA") (emphasis added). So too, the statements in the Notice of Non-Compliance and Kelley's letters are not "threats." It is implausible to conclude from these letters that PRRS presently planned to tow or boot Tobey's vehicle or report the debt to a credit bureau.[15]

> **c.  Kelley did not violate debt collection laws by sending letters to Tobey in a state where Kelley is not licensed to practice law.**

---

[15] Of note, Texas law expressly authorizes parking facility owners to tow or boot vehicles. Tex. Occ. Code § 2308.252 ("A parking facility owner may, without the consent of the owner or operator of an unauthorized vehicle, cause the vehicle and any property on or in the vehicle to be removed and stored at a vehicle storage facility at the vehicle owner's or operator's expense"); Tex. Occ. Code § 2308.257 ("A parking facility owner may, without the consent of the owner or operator of an unauthorized vehicle, cause a boot to be installed on the vehicle in the parking facility"). Further, nothing prevents a creditor from reporting a debt to a credit bureau. It might only be a violation to make such a report without noting that the debt was disputed. *See, e.g., Sayles v. Advanced Recovery Sys., Inc*., 206 F. Supp. 3d 1210, 1216 (S.D. Miss. 2016), *aff'd*, 865 F.3d 246 (5th Cir. 2017) ("ARS did not had an affirmative duty to correct its previous reports to the credit bureau, but once it elected to communicate with the credit agencies . . . it had an obligation to also communicate that the debt was disputed").

Tobey also alleges Kelley's letters run afoul of the relevant debt collection statutes "by falsely implying a licensed attorney will enforce the violation against the consumer" when Kelley was only licensed to practice law in Colorado. *See* Compl. ¶ 10 n.10. Not true. Kelley states "this matter will be forwarded to an attorney licensed in your state of residence for further proceedings." *See* Id., Ex. B. Moreover, neither letter states nor even implies Kelley is licensed to practice law in Texas. *See* Id., Exs. B, C. Kelley's licensure in Texas (or lack thereof) is irrelevant. And Tobey admits Kelley is in fact an attorney. *See* Compl. ¶ 10 n.10.

In any event, courts across the country have granted motions to dismiss based on similar pleading failures. *See, e.g., Nichols v. Frederick J. Hanna & Associates, PC*, 760 F. Supp. 2d 275, 278 (N.D.N.Y. 2011) (granting motion to dismiss where "Plaintiff fails to identify any case law to support the theory that it is a violation of the FDCPA for an attorney to mail a dunning letter to a debtor in a state that the attorney is not licensed to practice law"); *Cohen v. Wolpoff & Abramson, LLP,* 2008 WL 4513569, at *7 (D.N.J. Oct. 2, 2008) (granting motion to dismiss because "not even the least sophisticated debtor could be deceived when a communication which states that it is from an attorney is, in fact, from an attorney"); *Kelly v. Wolpoff & Abramson, L.L.P.*, 634 F. Supp. 2d 1202, 1212 (D. Colo. 2008) (dismissing FDCPA claim "because Plaintiff admits in her response that '[D]efendant is an attorney'").

### d.  Kelley's letters contain legally effective disclaimer language.

While the Complaint is unclear regarding how or why Kelley's involvement is misleading, Tobey appears to allege that Kelley's status as a lawyer somehow violates the FDCPA and TDCA. *See* Compl. ¶¶ 41, 46. That is untrue. While theoretically a debt collection letter from a law firm can be misleading to the "least sophisticated consumer" when there are no attorneys actively involved in the collection of the debt at the time the letter is sent, the law firm can foreclose liability

19

by including a "clear, prominent, conspicuous disclaimer that no lawyer participated in the debt collection at that time." *Gonzalez v. Kay*, 577 F.3d 600, 606 (5th Cir. 2009). It is sufficient to include this disclaimer language on the reverse side of the letter, provided a prominent notice appears on the front side directing the reader to the back. *Rodriguez v. Fulton Friedman & Gullace, LLP*, 2012 WL 3756589, at \*10 (S.D. Tex. Aug. 28, 2012) ("numerous cases have held that placing **Section 1962** disclosures on the reverse side of a debt collection letter is appropriate when there is a clear reference to review the reverse side") (emphasis in original).

The First Kelley Letter complies with the law by including exactly such disclaimer language. It clearly directed Tobey to "**SEE THE REVERSE SIDE FOR ADDITIONAL INFORMATION**[,]" wherein it disclaimed that "no attorney has independently evaluated your case or made any recommendations regarding the validity of the creditor's claims or personally reviewed the particular circumstances of the Parking Notice" on the reverse page. *See* Compl., Ex. B. This is the precise placement and type of legal disclaimer language courts have found *not* confusing or misleading. *Rodriguez*, 2012 WL 3756589, at \*10. As a matter of law, the First Kelley Letter is neither misleading nor deceptive.[16]

---

[16] In contrast to the first Kelley Letter, by the time Kelley sent the second letter, it had become clear Tobey's account had been individually evaluated by an attorney. *See* Compl., Ex. C ("Our office has read your appeal and/or dispute and reviewed the documentation provided). *Cf.* Id., Ex. B (disclaiming such involvement). Therefore, in sending the Second Kelley Letter, Kelley complied with longstanding precedent that allows him "to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors" because he "ensure[d] that an attorney has become professionally involved in the debtor's file." *See Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996). The Second Kelley Letter also clearly explains, "**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.**" *See* Compl., Ex. C. Tobey nonetheless claims this disclaimer is confusing because it does not reveal "that PRRS is the debt collector[.]" *See Id.* ¶ 47. But he does not allege any fact equating that PRRS (as opposed to Kelley) "is the debt collector," and in any event, the documents attached to the Complaint show a clear distinction. *Taylor*, 103 F.3d at 1236 (least sophisticated consumer standard protects debt collectors from "liability for bizarre or idiosyncratic consumer interpretations of debt collection materials").

20

### B.      The Complaint Fails To State A Claim Under The DTPA.

"Section 17.46(b) of the DTPA makes unlawful false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." *McPeters v. LexisNexis*, 910 F. Supp. 2d 981, 987 (S.D. Tex. 2012), *on reconsideration*, 11 F. Supp. 3d 789 (S.D. Tex. 2014). Tobey alleges PRRS violated this "laundry list" provision primarily because a "private party cannot assess a violation" like the "Notice Fee" and because PRRS's Notice gave the false impression that PRRS was "acting under or has sponsorship of police powers of the state[.]" *See* Compl. ¶ 73 (alleging violations of Tex. Bus. & Com. Code §§ 17.46(2), (b)(12)). However, even if these allegations were accurate (which they are not), these representations are only actionable if "relied upon by a consumer to the consumer's detriment[.]" Tex. Bus. & Com. Code § 17.50(a)(1)(B). Indeed, "[d]etrimental reliance is an essential element for proving false, misleading or deceptive acts under the DTPA." *McPeters*, 910 F. Supp. 2d at 987; *Robinson v. Match.com, L.L.C.*, 2012 WL 5007777, at *8 (N.D. Tex. Oct. 17, 2012), *aff'd sub nom., Malsom v. Match.com, L.L.C.*, 540 Fed. Appx. 412 (5th Cir. 2013) ("Reliance by the consumer is an element of DTPA claims that are based on false, misleading, or deceptive practices or section 17.46's laundry list violations").[17]

Tobey pleads no facts (much less facts that satisfy Rule 9(b)) in the Complaint stating he relied to his detriment on any misrepresentations made by either PRRS or Kelley. This is fatal to his claims under Section 17.50(a). *See, e.g., Brodsky v. Match.com, LLP,* No., 2010 WL 3895513,

---

[17] Additionally, "claims made under the DTPA for misrepresentation are subject to the heightened pleading requirements of Rule 9(b)." *Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 479 (E.D. Tex. 2021); *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013) ("At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby").

21

at *3 (N.D. Tex. Sept. 30, 2010) ("the failure to plead facts that establish reliance is fatal to plaintiffs' claims for [] violations of the DTPA"); *see also, e.g., Diamond Beach Owners Ass'n v. Stuart Dean Co., Inc.*, 2018 WL 7291722, at *6 (S.D. Tex. Dec. 21, 2018), *report and recommendation adopted*, 2019 WL 245462 (S.D. Tex. Jan. 17, 2019) ("Because Plaintiff has failed to allege enough facts concerning the reliance element to move its claim 'across the line from conceivable to plausible,' the DTPA cause of action should be dismissed'"). Thus, Tobey's "laundry list" DTPA claims must be dismissed.

Tobey further alleges the "Notice Fee Scheme" constitutes an "unconscionable action" in violation of the DTPA. *See* Compl. ¶ 71 (citing Tex. Bus. & Com. Code § 17.50(a)(3)). He alleges the supposed "Notice Fee Scheme" is "designed to extract higher payments from customers, resulting in higher returns for ACE and parking lot facilities." *See* Compl. ¶ 40. He therefore alleges it is "unconscionable" to charge a fee to parking violators—like Tobey—who admittedly do not pay in full for the use of a private parking lot. *See Id.* ¶¶ 70-71. Tobey illustrates what he alleges to be the "scheme" with a "hypothetical," which includes a chart showing greater revenue generated by free flow lots *vis a vis* lots with traditional gated entryways and exits. *See Id.* ¶ 40. When a plaintiff "state[s] that certain pleaded facts are 'hypothetical' . . . '[t]he court need not accept as true facts that the pleader does not even claim to be true.'" *Merritt v. Countrywide Fin. Corp.*, 583 Fed. Appx. 662, 665 (9th Cir. 2014). Accordingly, Tobey's allegations based on the hypothetical, including the chart, cannot plausibly state a claim for relief. *See Id.* And Tobey does not state anywhere in the Complaint how this alleged scheme took advantage of his lack of knowledge to a grossly unfair degree.

The DTPA defines an "unconscionable action" as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the

consumer to a grossly unfair degree." Tex. Bus. & Comm. Code § 17.45(5). To support this claim, Tobey summarily alleges "PRRS's Notice and Notice Fee Scheme, whereby they threaten fines, booting, and/or towing, further legal action, or reporting a debt to one or more credit bureaus is an intentional practice that is designed to take advantage of consumers' lack of knowledge to a grossly unfair degree." *See* Compl. ¶ 70. So, Tobey merely recites the statutory definition. *See* Id.

"To prove an unconscionable action, a plaintiff must show that (1) the defendant took advantage of her lack of knowledge, and (2) that 'the resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated.'" *Ardoin v. Stryker Corp.*, 2019 WL 4933600, at *6 (S.D. Tex. Oct. 7, 2019) (quoting *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001)). An "unconscionability claim requires proof of each consumer's knowledge, ability, experience, or capacity." *Lon Smith & Associates, Inc. v. Key*, 527 S.W.3d 604, 624 (Tex. App.—Fort Worth 2017, pet. denied). Tobey pleads no facts showing that PRRS took advantage of *his* lack of knowledge, ability, experience, or capacity. He does the opposite by acknowledging his position as an attorney attending a hearing (and being a former president of the Dallas Bar Association). This justifies dismissal. *See, e.g., Ardoin*, 2019 WL 4933600, at *6 (granting motion to dismiss because plaintiff "has not alleged any facts" showing that the defendant "took advantage of her lack of knowledge").[18]

### C.      Tobey Lacks Standing for Injunctive Relief.

Tobey requests this Court enter an injunction order prohibiting PRRS from continuing to engage in the alleged "Notice Fee Scheme." *See* Compl. ¶ 78. But Tobey only alleges "he suffered

---

[18] Even assuming that PRRS took advantage of Tobey's lack of knowledge, ability, experience, or capacity, it is not enough to establish an "unconscionable action." *Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 687 (N.D. Tex. 2006) ("[i]t is not enough to allege that a defendant 'simply ... took unfair advantage" of the consumer'"). He must allege that PRRS took advantage of him in a way that is "flagrant or glaringly noticeable." *Id.* Tobey fails to plead facts showing that PRRS took advantage of him in way that was flagrant or glaringly noticeable.

an irreparable injury, including lost time and mental anguish from ACE's and PRRS's illegal threats and simple monetary damages are inadequate to compensate for this injury." *See Id.* ¶ 80. "Because injunctive and declaratory relief 'cannot conceivably remedy any past wrong,' plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998)). Tobey pleads no facts from which the Court can infer a continuing or threatened injury. His requested relief "would only affect Defendants' future conduct and would not redress Plaintiff's injury." *Riley v. Houston Nw. Operating Co.*, L.L.C., 2020 WL 3103899, at *4 (S.D. Tex. June 11, 2020). Accordingly, this Court should dismiss Tobey's request for injunctive relief because he does "not have standing to seek injunctions against Defendants' for their future conduct." *Id.*

**D.      The Court Should Strike Tobey's Jury Demand And Class Action Allegations.**

"The Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Here, Tobey "requests a trial by jury on all issues triable by right to a jury" based on the mistaken belief he and the putative class members did not waive their rights to a jury trial "simply by parking their car in a lot." *See* Compl. ¶¶ 45, 83. But Tobey is wrong. As discussed above, Tobey (and any other customer parking in the Lot) entered into an enforceable agreement. *See, e.g., Franklin*, 832 F.3d at 744. Of note, courts have routinely enforced provisions requiring arbitration clauses appearing in "clickwrap" agreements. *See, e.g., In re Online Travel Co.,* 953 F. Supp. 2d 713, 725 (N.D. Tex. 2013) (compelling arbitration when it "was impossible to complete a transaction on the Travelocity website in the absence of affirmative assent to the User Agreement"); *see also, e.g., May v. Expedia, Inc.*, 2018 WL 4343445, at *3 (W.D. Tex. July 19, 2018)*, report and recommendation*

*adopted*, 2018 WL 4343427 (W.D. Tex. Aug. 27, 2018) (recommending that the district court compel arbitration when a "site required the user to click a 'Continue' button to complete the transaction, and directly above the 'Continue' button informed the user that '[b]y clicking Continue you are agreeing to our Terms and Conditions").

The Court should also strike Tobey's class action allegations. *See* Compl. ¶¶ 21-35. *See, e.g., Johnson v. Trugreen Ltd. P'ship*, 2013 WL 12120460, at *8 (W.D. Tex. May 21, 2013) ("The waiver in the parties' arbitration agreement is valid, and the named Plaintiffs must individually arbitrate their FLSA claims"); *Forby v. One Techs., LP*, 2020 WL 4201604, at *10 (N.D. Tex. July 22, 2020) (striking class allegations because the "putative class members are likely bound by the arbitration clause at issue"); *In re Online Travel Co.,* 953 F. Supp. 2d at 725 (striking absent class member claims because "[a]ny claims by absent class members bound by the User Agreement would be impertinent, as those class members would be bound to individually arbitrate their claims"). Courts repeatedly enforce these waivers. *See e.g.*, *Naranjo v. Nick's Management, Inc.,* 652 F. Supp.3d 737, 751-754 (N.D. Tex. 2023) (enforcing collective action waiver in a licensing agreement against employee).

## IV.    PRAYER

Wherefore, premises considered, PRRS requests that the Court grant PRRS's Motion to Dismiss Plaintiff Robert Tobey's Class Action Complaint and, Alternatively, to Strike Jury Demand and Class Allegations in its entirety and all other relief to which the Court finds PRRS to be justly entitled.

25

Date:  January 23, 2025

Respectfully submitted,

*/s/ Robert E. Linkin*
Shain A. Khoshbin
Texas Bar No. 11375975
skhoshbin@munckwilson.com
Tracy J. Carson
Texas Bar No. 24101600
tcarson@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
2000 McKinney Ave., Suite 1900
Dallas, Texas 75201
Telephone: (972) 628-3600
Facsimile: (972) 628-3616

J. David Rowe
Texas Bar No. 00794564
drowe@munckwilson.com
Robert E. Linkin
Texas Bar No. 00795773
rlinkin@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
807 Las Cimas Parkway, Suite 300
Austin, Texas 78746
Telephone: (737) 201-1600
Facsimile: (737) 201-1601

**COUNSEL FOR DEFENDANT
PARKING REVENUE RECOVERY
SERVICES, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that this document has been served by filing with the Court's electronic-filing system as required by Rule 5(b) on January 23, 2025.

*/s/ Tracy Carson*
Tracy Carson