UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ROBERT TOBEY,

*Plaintiff*,

v.

ACE PARKING MANAGEMENT, INC., and PARKING REVENUE RECOVERY SERVICES, INC.,

*Defendants*.

§ § § § § § § § § § §

Civil Action No. 3:24-CV-2932-X

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Parking Revenue Recovery Services, Inc.'s (Recovery Services) motion to compel arbitration, (Doc. 15), and Defendant Ace Parking Management Inc.'s (Ace Parking) motion to compel arbitration (Doc. 28). After reviewing the law and the parties' briefing, the Court **GRANTS** Ace Parking's and Recovery Services' motions to compel arbitration. As a result, the Court **ORDERS** the parties to arbitrate this dispute and **STAYS** this case pending arbitration. The parties shall file a motion to lift the stay within ten days of any arbitration decision. Additionally, the Court **DENIES WITHOUT PREJUDICE** all other outstanding motions (Docs. 18, 26, 30).

## I. Factual Background

This case reveals that, much like the Eyes of Texas, the Eyes of Parking Enforcement are upon you all the live long day. Robert Tobey, a lawyer, managed to find some parking in Downtown Dallas—no small feat no matter the time of day. He

dutifully paid for his parking spot at the lot's kiosk and went on his way to the George Allen Courthouse for a hearing. As it turns out, he overstayed his parking time by eleven minutes, which prompted Recovery Services to issue him a $90 "Notice Fee" for his overstay.

According to the complaint, Ace Parking owns or operates the lot but partners with Recovery Services to collect outstanding fees and to monitor the lot. At the lot in question, Recovery Services has several signs dotting the lot informing those who see them that "This is a Contract" and that "By parking on this Facility, you accept all these terms."[1] Among those terms is an arbitration clause that "By parking on this Facility, you hereby agree that the sole remedy for all unresolved disputes is binding arbitration and specifically waive the right to a jury trial, class action and/or class arbitration."[2]

Additionally, there are kiosks in the lot that allow parkers to pay for the time they spend parked on the lot. On those kiosks is a red sticker that reads: "By parking on this Lot, you hereby agree that the sole remedy for an unresolved dispute is binding arbitration and specifically waive the right to a jury trial, class action and/or class arbitration."[3]

## II. Legal Standards

Courts must "stay the trial of the action" in which a party moves for compelling arbitration when the Court is "satisfied that the issue involved in such suit or

[1] Doc. 16 at 5.

[2] Doc. 16 at 5.

[3] Doc. 16 at 6.

proceeding is referable to arbitration under such an agreement."[4] "Enforcement of an arbitration agreement involves two analytical steps. The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement."[5]

Before turning to the merits of the motion, the Court must decide whether, based on the evidentiary record, the making of the Agreement is in issue; otherwise, the Court may turn to the merits.[6] But, if the making of the Agreement is in issue, then the Court determines whether to hold an evidentiary hearing to reach a merits resolution.[7] "To put the making of the arbitration agreement in issue, a party is required to unequivocally deny that he agreed to arbitrate and produce *some evidence* supporting his position."[8] Finally, if the Court reaches an evidentiary hearing, then the party seeking to compel arbitration must prove the required elements by a preponderance of the evidence.[9]

## III. Analysis

### A. Contract Formation

Tobey advances several arguments against the enforceability of the contract—all stemming from the notion that the contract lacks some essential element.

---

[4] 9 U.S.C. § 3.

[5] *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original).

[6] *See* 9 U.S.C. § 4.

[7] *Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 363 (5th Cir. 2015).

[8] *Gallagher v. Vokey*, 860 F. App'x 354, 357 (5th Cir. 2021) (cleaned up) (emphasis added).

[9] *Grant v. Houser*, 469 Fed. App'x. 310, 315 (5th Cir. 2012).

Specifically, Tobey argues that the contract lacks: (1) consideration, (2) mutuality, (3) conspicuousness, and (4) definiteness. Tobey also argues that the agreement is unconscionable, which the Court analyzes in this section as well.

*Consideration*. Under Texas law an agreement to arbitrate is a contract and, as a result, must be supported by consideration.[10] "[W]hen an arbitration clause is part of a larger, underlying contract, the remainder of the contract may suffice as consideration for the arbitration clause."[11] Consideration is a two-way street: one must give and one must get, on both sides. Complicating the case here is the presence of Ace Parking and Recovery Services. Tobey says he paid Ace to park in the lot and that, as a result, there was no consideration he gave Parking Recovery (who had the arbitration signs and stickers). But there is consideration between Tobey and Parking Recovery. Recovery Services may boot or tow a vehicle, but forbears such removal in exchange for following the rules of the lot.[12] In other words, Parking Services gets compliance with the rules and gives up the right to tow or boot. Tobey gives up the freedom to ignore the rules and gets the freedom of his car not being towed or in the boot of shame. Tobey does not bring forward evidence to refute this understanding. Tobey argues that the ability of Recovery Services to tow and boot is a service provided to Ace Parking, there is no reason to think that forbearing such enforcement, when enabled to do so, cannot also be consideration for a contract with any parker—including Tobey.

---

[10] *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006).

[11] *Id.*

[12] *See* Doc. 17 at App. 11.

*Mutuality*.  Tobey argues that the arbitration agreement lacks mutuality, because he interprets the contract as only requiring arbitration for claims brought by the parker, not Recovery Services.  But this is not a natural reading of the contract.  The contract itself states: "By parking on this Facility, you hereby agree that the sole remedy for all unresolved disputes is binding arbitration and specifically waive the right to a jury trial, class action and/or class arbitration."[13]  Tobey's interpretation doesn't work with the plain language of the contract *in context*.  The context provides that arbitration is the "sole remedy" for "all unresolved disputes" not only those brought by the parker or Recovery Services.[14]  In short, Tobey's reading would nullify the word "all" from the arbitration clause.[15]  This reading is impermissible, because under Texas law, courts "strive to give effect to all of the words and provisions so that none is rendered meaningless."[16]

*Conspicuousness*. Tobey argues that the red signs were inconspicuous and therefore cannot be considered a contract because there could not have been mutual assent to an inconspicuous contract.  But Tobey admits he paid for parking at the parking kiosk.[17]  He even provided a picture of the kiosk with a bright red sticker apprising the parker of the arbitration agreement.  Here's the picture:

---

[13] Doc. 16 at 2.  The red kiosk stickers are substantively identical.  *See* Doc. 16 at 6.

[14] Doc. 16 at 2.

[15] The same goes for "an" on the red kiosk sticker, which in this context refers to "any" and is substantively the same as "all."  *See* Doc. 16 at 6.

[16] *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015).

[17] Doc. 1 at 11.



[18]

[18] Doc. 43 at 12.

Recovery Services provided a closer image of the red kiosk sticker, pictured here:

[19]

Under Texas law, the relevant consideration is whether "notice of the arbitration provision was reasonably conspicuous" and that determination is a question of law.[20] In the different yet informative area of limitations of liability

[19] Doc. 20 at App. 11.

[20] *HomeAdvisor, Inc. v. Waddell*, No. 05-19-00669-CV, 2020 WL 2988565, at *4 (Tex. App.—Dallas June 4, 2020, no pet.) (mem. op.).

contracts, "[l]anguage may satisfy the conspicuousness requirement by appearing in larger type, contrasting colors, or otherwise calling attention to itself."[21]

There are a few things here that render the sticker conspicuous. The language is on a bright red sticker set against a dark gray backdrop, it had bold and all-caps font, and it was placed directly in the center of the kiosk. Because the sticker contains the essential terms concerning this dispute and Tobey, he had reasonable notice of those terms, conspicuousness is no barrier to contract enforcement.

*Definiteness*. Tobey's next argument as to the contract is definiteness, or lack thereof. Tobey argues that the red signs lacked definiteness such that they cannot form a valid contract. Tobey seems to argue that because the signs reference Facility Rules and there is no other sign that says "Facility's rules"[22] with a list, then the contract is indefinite.

However, there are a few directives that the parker must follow. Namely, listed at the very top of the red sign, that there is "NO FREE PARKING ANYTIME." And on the Ace Parking sign that there is "NO IN & OUT" of the lot. Texas law provides that "a contract need only be definite and certain as to those terms that are material and essential to the parties' agreement."[23] The "Facility's use rules" are sufficiently defined such that definiteness is no problem—among those is: Don't park for any time without paying.

---

[21] *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004).

[22] The kiosk sticker refers to "Lot rules" but that is substantively identical to "Facility's rules." *Compare* Doc. 20 at App. 20 *with* Doc. 20 at App. 7.

[23] *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (cleaned up).

*Unconscionability*. The contract is not substantively or procedurally unconscionable. As an initial matter, the legal standard is difficult to define. As the Texas Supreme Court has observed, "[t]he term ["unconscionability"] defies a precise legal definition because 'it is not a concept, but a determination to be made in light of a variety of factors not unifiable into a formula.'"[24] Nevertheless, unconscionability is a question of law that looks to "the circumstances of the bargain" including "the commercial atmosphere in which the agreement was made, the alternatives available to the parties at the time and their ability to bargain, any illegality or public-policy concerns, and the agreement's oppressive or shocking nature."[25]

As for atmosphere, Tobey largely recasts his inconspicuousness arguments, with which the Court previously disagreed. As for alternatives, Tobey claims there was no reasonable alternative once he entered the lot. Sure, but there can be plenty of alternatives, like rideshare, public transport, and other parking lots. Tobey's argument that there is no alternative once he's in the lot is simply too narrow a view of the alternatives. Because Tobey did not address alternatives from a broader view, he has not shown that this factor weighs in his favor.

Tobey additionally argues that the contract is against public policy. In essence, Tobey argues that the contract is void as against public policy because the arbitration clause "restrict[s] consumers' ability to enforce their rights under federal and state

---

[24] *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 228 (Tex. 2014) (quoting 27 Stephen Cochran, Texas Practice Series: Consumer Rights and Remedies § 4.2 at 394 (3d ed.2002)).

[25] *Id.*

law."[26] But Tobey has not met his burden to show that the arbitration agreement is so contrary to public policy that the court must invalidate it. The Supreme Court requires the party opposing arbitration to at minimum provide "*some* specific information of future costs."[27] Absent any such evidence, the Court cannot invalidate the arbitration agreement for public policy reasons.

Tobey's argument that the contract is oppressive is the already-rejected argument that the arbitration agreement only applies to a parker's claims, rather than all parties. Tobey also argues that he did not receive any substantial benefit under the agreement. But as discussed above, he received the ability to park at the lot.

Tobey's final argument is that Recovery Services knew no one would likely see the signs and that it is not economically viable to contest the parking notices in arbitration. And he is correct that one factor in a court's determination of unconscionableness is "knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract."[28] But the rest of this language reads: "knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement."[29] Tobey never presents anything other than his own say-so that Recovery Services

[26] Doc. 40 at 23.

[27] *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001).

[28] *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App.—Waco 2005, pet. denied).

[29] *Id.*

knew the contract was inconspicuous. And regardless, this factor is not enough to render the contract unconscionable.

The only factor that clearly favors Tobey is the ability to bargain with Recovery Services over the parking situation. But this is only one factor to look to among others. Because only one of several factors weighs in his favor, the contract is not unconscionable.

* * *

As a result of the above analysis, the Court determines that the arbitration clause is a valid and enforceable agreement.

**B. Scope of Arbitration Agreement**

This dispute fits squarely within the scope of the arbitration agreement. Tobey attempts to argue again here that the arbitration clause is too broad and, as a result, exceeds the Federal Arbitration Act's scope. This general statement of law is not without support. Indeed, Tobey directs the Court to cases stating that when an arbitration clause is so broad that it covers matters outside the transaction evidenced by the contract at issue, then the Federal Arbitration Act no longer applies.[30] Assuming this is the standard, Tobey again mistakenly argues that he has no contractual relationship with Recovery Services—only with Ace Parking. Plainly put, the arbitration clause is broad but not boundless. Any reasonable person would understand that "disputes" as used on the sign[31] refers to a dispute arising out of the

---

[30] Doc. 20–21 (citing *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 724 (9th Cir. 2020) (O'Scannlain, J., concurring) and *Loy v. Harter*, 128 S.W.3d 397, 403 (Tex. App.—Texarkana 2004, pet. denied)).

[31] Doc. 20 at App. 7. Or "dispute" on the sticker. Doc. 20 at App. 20.

parking situation. Because this dispute fits the bill, it falls within the scope of the arbitration agreement.

### C. Ace Parking and the Arbitration Agreement

Finally, the Court considers whether Ace Parking receives the benefit of the arbitration agreement. Ace Parking advances a theory called "intertwined estoppel" for why it should be included in the scope of the arbitration agreement. Intertwined estoppel "involves compelling arbitration when a nonsignatory defendant has a close relationship with one of the signatories and the claims are intimately founded in and intertwined with the underlying contract obligations."[32] The Fifth Circuit has stated that intertwined estoppel is a part of Texas law.[33]

To have an adequately close relationship one asks: "Would a reasonable signatory to the arbitration agreement anticipate being forced to arbitrate claims against the nonsignatory?"[34] And "when plaintiffs treat multiple defendants 'as a single unit' in their pleadings, 'raising virtually indistinguishable factual allegations' against them, then that cuts in favor of a close relationship."[35] In general, close relationships "typically include a non-signatory owner, agent, or parent of a signatory company."[36]

---

[32] *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 610 (5th Cir. 2016) (cleaned up).

[33] *Id.* at 612.

[34] *Id.* at 405.

[35] *Id.* (cleaned up).

[36] *Johnson v. Parsley Energy Operations, LLC*, No. MO:21-CV-053-DC, 2022 WL 2027963, at *4 (W.D. Tex. May 3, 2022), *appeal dismissed sub nom. Johnson v. Parsley Energy Operations, L.L.C.*, No. 22-50451, 2023 WL 3863102 (5th Cir. Feb. 22, 2023) (quoting *Randle v. Metro. Transit Auth. of Harris Cty.*, No. CV H-18-1770, 2018 WL 4701567, at *9 (S.D. Tex. Oct. 1, 2018)).

Here, we have a plaintiff (Tobey) who has an arbitration agreement with a defendant (Revenue Services) but is trying to avoid arbitration with the defendant's principal (Ace Parking, also a co-defendant) when the claims against both defendants are functionally identical and arise from the same set of facts. Ace Parking and Recovery Services have a close relationship. Tobey's response motion to dismiss brief asserts that Recovery Services is Ace Parking's agent such that it is vicariously liable for Recovery Services' actions. Recovery Services carries out the parking enforcement function on behalf of Ace Parking[37]—climbing up the agency ladder to sue the principal is functionally no different than climbing a corporate parent-subsidiary ladder to go after the parent. And throughout Tobey's complaint, he even references the two collectively: "ACE/PRRS"[38] or "ACE and PRRS"[39] or "ACE and/or PRRS."[40] Here Tobey has treated the two as practically a single unit in his pleading. And all his claims, which bear virtually identical factual allegations, are against both Ace Parking and Recovery Services. As a result, Ace Parking and Recovery Services have a sufficiently close relationship to warrant estoppel.

Next, the claims are intimately founded in and intertwined with the underlying contract obligations. The reason is pretty simple: By parking in the lot, Tobey agreed to follow the parking rules, including "no free parking" and to arbitrate any disputes. The claims in this suit arise directly from Recovery Services' attempt

---

[37] Doc. 47 at 12.

[38] Doc. 1 at 4.

[39] *See generally* Doc. 1 (appearing 31 times in the complaint).

[40] *See generally* Doc. 1 (appearing 36 times in the complaint).

to conduct parking enforcement, which is an imminently foreseeable consequence of failing to abide by the prime directive of the parking agreement: no free parking.

Tobey cites to *Black v. Diamond Offshore Drilling, Inc.*[41] for the proposition that because the claims are statutory, they cannot be founded in and intertwined with the contract obligations. But that case is markedly different. There, the plaintiff's claims arose under the Jones Act and breach of common law maritime duties—truly nothing to do with the underlying employment contract.[42] Here, it's different. As noted above, the claims arise from the enforcement of the contract itself—namely that the way in which Revenue Services and Ace Parking enforce the contract is illegal.

* * *

Accordingly, Ace Parking may enforce the arbitration agreement as a nonsignatory to the agreement.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Ace Parking's and Recovery Services' motions to compel arbitration. As a result, the Court **ORDERS** the parties to arbitrate this dispute and **STAYS** this case pending arbitration. The parties shall file a motion to lift the stay within ten days of any arbitration decision. Additionally, the Court **DENIES WITHOUT PREJUDICE** all other outstanding motions.

---

[41] *Black v. Diamond Offshore Drilling, Inc.*, 551 S.W.3d 346 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

[42] *Id.* at 350.

**IT IS SO ORDERED** this 11th day of July, 2025.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE